IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:10 CV 258 R

| | |
|---|---|
| GLEN EDWARD CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS ALVIN RHONEY, in his individual capacity, ROBERT A. MULLINAX, as Public Administrator of the Estate of MARK RICHARDSON SAMS, in his individual capacity, and CITY OF HICKORY,<br><br>Defendants. | Defendants Rhoney and Sams' Memorandum in Support of their Motion to Dismiss |

## NATURE OF THE CASE

Plaintiff filed this action on November 3, 2010 seeking damages, pursuant to 42 U.S.C. §§ 1983 and 1988, N.C. Gen. Stat. § 1D-15, and the common law of North Carolina, arising out of his arrest and 1994 conviction for two murders in 1992. The matter is before the Court on the individual defendants, Dennis Alvin Rhoney ["Rhoney"] and Robert A. Mullinax, as Public Administrator of the Estate of Mark Richardson Sams' ["Sams"] Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

In his 50 page Complaint, Plaintiff alleges that on December 16, 1994 Plaintiff was convicted for the murders of Betty Jean Ramseur ["Ramseur"] and Tenene Yvette Conley ["Conley"]. (Complaint ["Doc. 1"], p.5, ¶ 30.) His murder convictions were vacated on November 6, 2007. (Doc. 1, p. 5, ¶ 32.) From August 1992 through November 1994, Defendant Rhoney was the lead detective for the City of Hickory for the Ramseur murder. (Doc. 1, p. 7, ¶

48.)  From August 1992 through February 1994, Defendant Sams was the lead detective for the City of Hickory for the Conley murder; after Sams left the Hickory police department in February 1994, Rhoney took over as lead investigator of the Conley murder.  (Doc. 1, p. 7, ¶¶ 49-50.)  Plaintiff alleges that Sams and Rhoney were responsible for providing the district attorney's office with investigatory materials, including all exculpatory evidence, compiled during the Ramseur and Conley criminal investigations by the Hickory police department.  (Doc. 1, p. 7, ¶51.)

The Complaint maintains that after Rhoney was assigned to the Ramseur murder investigation, Rhoney interviewed Nicole Cline who told Rhoney that Plaintiff told her that he (Plaintiff) killed Ramseur and put Ramseur in the basement of a house; and that as a result of that interview Rhoney "improperly and erroneously" concluded that Plaintiff murdered Ramseur. (Doc. 1, pp. 10-11, ¶¶ 75-78.)  The Complaint also alleges that after August 25, 1992, Rhoney believed that Plaintiff was the only suspect of the Ramseur murder and that Rhoney, thereafter, focused his investigation on proving Plaintiff's guilt.  (Doc. 1, p. 11, ¶ 79.)  The Complaint alleges that because Rhoney believed Plaintiff killed Ramseur, Rhoney withheld exculpatory evidence from the prosecution, including a September 1992 telephone memo, a Hickory police department file of a June 12, 1992 fire, a December 1992 photo lineup identification, and an SBI agent's report of a November 1992 fire.  (Doc. 1, p. 12, ¶ 85.)

With regards to the telephone memo, the Complaint alleges that Rhoney received a message to return the call of Richard Allen, "who overheard a conversation ref Betty Ramseur" in the county jail and that Rhoney later did return Allen's call.  (Doc. 1, pp. 13 – 14, ¶¶ 92, 94.) During the call, Allen provided information he overheard between two men, including E.R. Frazier – an individual who allegedly was identified as driving Ramseur's car.  (Doc. 1, pp. 13-

14, ¶¶ 90, 95.)  Rhoney allegedly told Allen that the police already had a suspect in the Ramseur murder; as a result of the call Rhoney created some notes on the back of a telephone memo. (Doc. 1, p. 14, ¶¶ 97-98.)  The Complaint asserts this information was exculpatory and that Rhoney intentionally withheld the telephone memo and his conversation with Allen from the prosecution.  (Doc. 1, p. 14, ¶ 102.)

The Complaint also alleges that Rhoney knew that the Hickory police department had a file from its investigation of a June 1992 fire, and that this investigation was exculpatory evidence that Rhoney failed to turn over to the prosecution.  (Doc. 1, p. 18, ¶ 119.)  Rhoney also allegedly knew that an SBI fire investigation from November 1992 was exculpatory and, nevertheless, failed to turn it over to the prosecution.  (Doc. 1, p. 20, ¶¶ 133, 139-140.)  The Complaint also asserts that Rhoney showed a photographic line up to Alvin Creasman to see if Creasman could identify Plaintiff as being the man he saw the morning of the fire and that Creasman positively identified someone other than Plaintiff.  (Doc. 1, p. 18, ¶¶ 121, 123.) Rhoney allegedly created a document about this lineup and knew this information was exculpatory.  (Doc. 1, pp. 18-19, ¶¶ 125-126.)  The Complaint goes on to allege that Rhoney withheld the photo lineup from the prosecution, destroyed the photos, and either destroyed a supplemental report about the lineup or purposefully never made such a report.  (Doc. 1, p. 19, ¶ 128.)

On December 23, 1992 Rhoney had a warrant for arrest issued to Plaintiff for the murder of Ramseur.  On December 31, 1992, Rhoney served the warrant and arrested Plaintiff.  (Doc. P. 21, ¶¶ 141-142.)

As for the murder investigation of Conley, the Complaint alleges that Sams "improperly and erroneously" concluded that Plaintiff murdered Conley, and that Sams withheld exculpatory

evidence from the prosecution. (Doc. 1, pp. 22-23, ¶¶ 158, 160.) It contends that Sams and Rhoney withheld the following (1) a report prepared by Lt. Hamilton dated August 15, 1992; (2) handwritten notes taken by Sams from August 27, 1992; and (3) a report prepared by Sergeant Carlsen from an interview of September 2, 1992. (Id.)

The Complaint alleges that Hamilton, a lieutenant with the Hickory police department, prepared a report of an interview and shared the information and report with Sams. (Doc. 1, p. 25, ¶¶ 172, 174.) Defendant Sams knew the report was exculpatory evidence and that Sams withheld this report from the prosecution. (Doc. 1, pp. 25,25, ¶¶ 175-176.) As for the hand written notes, the Complaint alleges that Sams interviewed a Mike Cosby and took handwritten notes from this interview. (Doc. 1, p. 26, ¶¶ 177, 180.) Sams' handwritten notes contained some incorrect information as to the date Gene Robinson saw Conley get into a car. (Doc. 1, p. 26, ¶ 181.) The Complaint alleges that Sams knew that the information reported by Cosby and contained in Sams hand written notes (that allegedly implicated Billy Hull) were exculpatory evidence that should have been turned over to the prosecution, but Sams failed to put the exculpatory evidence in his typed report. (Doc. 1, p. 27, ¶¶ 187-188.) Finally, the Complaint alleges that in September 1992, Dan Carlsen, a sergeant with the Hickory police department, prepared a report which Carlsen gave to Sams and told Sams about his interview with Carl Dennis Geter; Geter told Carlsen that he heard that Hull and George Reinhardt had killed Conley. (Doc. 1, p. 28, ¶¶ 190, 192-193.) The Complaint asserts that Sams left out this exculpatory evidence from the report he created and withheld Carlsen's report from the prosecution. (Doc. 1, pp. 29-30, ¶¶ 199-200.)

The Complaint alleges that it was the official policy of the City of Hickory that its police officers were permitted during the time complained of in Plaintiff's Complaint to withhold

"handwritten notes, telephone memos, and pending lab work from the prosecution." (Doc. 1, p. 44, ¶ 285.) The Complaint alleges that "[u]pon information and belief, Defendnts Rhoney and Sams acted in accordance with the custom that existed" at the Hickory police department when they allegedly withheld the exculpatory evidence. (Doc. 1, p. 45, ¶ 290.)

Plaintiff was indicted for the murder of Conley on August 16, 1993. (Doc. 1, p. 30, ¶ 203.) In February 1994, Rhoney became the lead investigator in the Conley murder investigation. (Doc. 1, p. 31, ¶ 208.) The Complaint goes on to allege that Rhoney reviewed the Hickory police department's investigative file and "discovered" that Sams withheld Conley exculpatory evidence; that Rhoney continued to withhold this evidence; and further he failed to investigate other suspects in the Conley murder. (Doc. 1, p. 31, ¶¶ 209, 211.)

The Complaint further alleges that during the actual prosecution of the Ramseur and Conley murders, Rhoney was present in the courtroom when the assistant district attorney (ADA) stated that he (the ADA) had produced all the exculpatory evidence to the Plaintiff, and that Rhoney failed to notify the ADA that some exculpatory evidence had been withheld. (Doc. 1, p. 32, ¶¶ 217-218.) Plaintiff was thereafter convicted of the Ramseur and Conley murders on November 10, 1994 and was sentenced to death for those murders on November 16, 1994. (Doc. 1, p. 33, ¶¶ 226, 228.) In addition, the Complaint alleges that Rhoney and Sams knew that the State's theory presented at the trial was false and "misleading," and that Rhoney "falsely" testified at trial that he never talked to Creasman, except for one time in order to give him a cup of coffee on the day of the June 1992 fire. (Doc. 1, pp. 34-35, ¶¶ 230-232, 234.) According to the Complaint, "[a] reasonable likelihood" existed that Plaintiff would have been acquitted had Rhoney and/or Sams produced some or all of the exculpatory evidence. (Doc. 1, p. 37, ¶ 248.)

On November 6, 2007 the Honorable Robert C. Ervin issued an order entitling Plaintiff to a new trial on **several grounds**, including the **State's failure** to disclose exculpatory evidence in violation of *Brady v. Maryland*. (Doc. 1, p. 38, ¶¶ 225 - 226.) (Emphasis added.) Thereafter the Catawba County district attorney dismissed the murder charges against Plaintiff and Plaintiff was released from prison. (Doc. 1, p. 38, ¶¶ 228- 259.)

Plaintiff's Complaint alleges two claims against the individual officer defendants. The First Claim alleges that Rhoney and Sams intentionally withheld exculpatory evidence from the prosecution in "bad faith" and, as such, Rhoney and Sams are liable to the Plaintiff under 42 U.S.C. § 1983 for violating Plaintiff's rights under the Fourteenth Amendment. (Doc. 1, pp. 41, 43, ¶¶ 270, 280.) The Second Claim is asserted against the City of Hickory and not against the individual officer defendants. Plaintiff's Third Claim alleges that Rhoney and Sams are liable to Plaintiff for the tort of obstruction of public justice. (Doc. 1, p. 47, ¶ 301.) Plaintiff seeks compensatory and punitive damages against Defendants Rhoney and Sams and seeks the recovery of his reasonable attorney fees. (Doc. 1, pp. 48-49, ¶¶ 303 – 309.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the allegations contained in a complaint. On a motion to dismiss under Rule 12(b)(6), all well-pled allegations are presumed to be true and the court views the allegations in the light most favorable to the Plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). *See also Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1954 (2009) for related Rule 8 requirements further discussed below.

## ARGUMENT

1. Plaintiff's Complaint Against Rhoney and Sams Fail to State a Claim Upon Which Relief Can Be Granted.

The Supreme Court in *Ashcroft v Iqbal*, recently emphasized that Rule 8 of the Federal Rules of Civil Procedure "requires 'more than conclusions' to unlock the doors of discovery for a plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d, 260 (4th cir. 2009). Under *Nemet*, the Court must determine whether the facts pled by Plaintiff in his Complaint, in the face of certain immunities from suit, make out a plausible claim for violations of constitutional rights or state law. *Nemet*, 591 at 256. As such, the Court must first identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, at 1951. Finding that the plaintiff in *Iqbal* failed to state a claim under Rule 8, the Supreme Court held:

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of 'his religion, race, and/or national origin and for no legitimate penological interest." The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. These bare assertions… amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim…As such the allegations are conclusory and not entitled to be assumed true.
>
> We next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief. The complaint alleges that "the [FBI], under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men…as part of its investigation of the events of September 11. … Taken as true, theses allegations are consistent with petitioners' purposefully designating detainees "of high interest" because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose.

*Iqbal*, at 1951. As the Fourth Circuit has recently stated in light of *Iqbal*, "[t]he complaint must, however, plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.' Without such 'heft,' the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are 'merely consistent

with a defendant's liability fail to nudge claims 'across the line from conceivable to plausible.'" *Nemet*, at 256.

Plaintiff's Complaint stripped of its conclusory language alleges that Rhoney and Sams formed a belief that Plaintiff murdered Ramseur and Sams and set out in the course of their investigation to develop evidence to prove that. The Complaint further asserts that Rhoney and Sams was aware of certain exculpatory evidence, some they developed, and some they did not, but regardless did not turn this evidence over to the ADA. The Complaint further alleges that it was the custom of the police department to withhold certain evidence, including hand written notes. (Doc. 1, p. 31, ¶ 209.)

In the case *sub judice*, the well pled facts fail to "nudge" this Complaint across the line from conceivable to plausible. *Iqbal*, at 1951. The Fourth Circuit recently held that "to speak of the duty binding police officers as a *Brady* duty is simply incorrect." *Jean*, 221 F.3d at 660. Additionally there is no recognizable § 1983 injury for a police officer's failure to disclose exculpatory evidence for avoiding prosecution on less than probable cause. *Id* at 660. Finally, it is "impermissible to hold the police liable for due process violations under § 1983 where they have acted in good faith." *Id*. at 660. As such, Plaintiff's Complaint should be dismissed against Defendants Rhoney and Sams.

2. Defendants Rhoney and Sams are entitled to Qualified Immunity on Plaintiff's 42 U.S.C. § 1983 claims.

It has long been established police officers, such as Rhoney and Sams, are entitled to qualified immunity for §1983 claims for their discretionary functions when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996). *See also Harlow v.*

*Fitsgerald*, 457 U.S. 800, 818 (1982) (holding that qualified immunity is designed to protect government officials, such as the individual police officers, from the burdens of trial and threat of monetary damages).

The Complaint alleges that Rhoney and Sams withheld exculpatory evidence during their investigation into the Ramseur and/or Conley murders during various times in 1992. (Doc. 1, pp. 12, 24, ¶¶ 85, 168.) The Complaint alleges that Rhoney testified at the grand jury in January 1993 and that the grand jury indicted Plaintiff for the Ramseur murder on January 11, 1993. (Doc. 1, p. 21, ¶¶ 143, 144.)

The Complaint also alleges that Sams testified at the grand jury in August of 1993 and Plaintiff was indicted by the grand jury for the murder of Conley on August 16, 1993. (Doc. 1, p. 30, ¶¶ 203-204.) The Complaint goes on to allege that after Plaintiff's indictment for both murders, Rhoney became the lead investigator in the Conley murder in February 1994; that thereafter Rhoney reviewed the police file containing the alleged exculpatory evidence and withheld this evidence from the Prosecution. (Doc. 1, p. 21, ¶¶ 143, 144.) Finally, the Complaint alleges that Rhoney was present in court in 1994 when the ADA made a statement to the court that all the exculpatory evidence had been produced and that Rhoney did not alert the ADA at that time that exculpatory evidence had been withheld. (Doc. 1, p. 32, ¶¶ 217-218.)

Assuming, *arrguendo*, that Plaintiff has alleged facts to support a constitutional deprivation of liberty without due process of law, Rhoney and Sams are nonetheless entitled to qualified immunity and Plaintiff's 42 U.S.C. § 1983 claims must be dismissed.

The Fourth Circuit in *Jean v. Collins*, 155 F.3d 701, 708 (1998), *remanded and vacated on other grounds*, *Jean v. Collins*, 526 US 142 (1999), held in 1998 – *after the events of the case before us* - that as of 1982 a police officer would not have known that a failure to turn over

exculpatory evidence to the prosecution violated a criminal defendant's clearly established constitutional rights. It was at most not until the **1996** decision of *Taylor v. Waters*, 81 F.3d 429, 436 fn.5 (1996) did the Court clarify that *Goodwin v Metts*, 885 F.2d 157 (4th Cir. 1989) together with *Albright v. Oliver*, 310 U.S. 266 (1994) may have established that that a police officer's failure to disclose exculpatory evidence to the prosecution could work to deprive a Section 1983 plaintiff of a right to a fair trial. *Id*. In fact as recent as 2000, the Fourth Circuit stated in *Jean v. Collins*, 331 F.3d 656, *cert. denied*, 531 U.S. 1076 (2001) that the "exact nature of **any** duty that the law imposes on police with regard to exculpatory evidence" has been unclear." *Id.* at 559.

The unpublished Fourth Circuit opinion of *Walker v. Sopher*, 1998 WL 682283 (C.A. 4 (W.Va.) 1998) specifically looked at the issue of whether or not the failure of an officer to turn over exculpatory information to the prosecution would violate a criminal defendant's clearly established constitutional right. The Fourth Circuit in 1998 held that the holding in *Goodwin* did not strip a public official of qualified immunity for failure to turn over exculpatory evidence to the prosecution. *Walker*, 1998 WL 682283 *5.

According to Plaintiff's Complaint, Sams was the lead investigator in the Conley murder from 1992 until February 1994, when he left the Hickory police department. (Doc. 1, pp. 7, 23, ¶¶ 48, 161.) Rhoney was the lead investigator from 1992 through November 1994 in the Rhoney investigation and was the lead investigator in the Conley investigation after Sams left from February 1994 through November 1994. (Doc. 1, p.7, ¶¶ 48, 50.) Rhoney and Sams are, thus, entitled to qualified immunity for their actions of allegedly withholding exculpatory evidence from the prosecution from 1992 - 1994 because at all times complained of in the Complaint the withholding of exculpatory evidence from the prosecution did not violate a clearly established constitutional right of which a reasonable person would have known. Id.

3. Plaintiff's claim for Obstruction of Public Justice is Barred by the Officer's Public Official Immunity.

The common law claim of obstruction of justice forbids any act which "prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, 183, N.C. App. 57, 59 (2007). It is well established that police officers who perform discretionary acts are immune from negligence claims. *Shaw v. Stroud* 13, F.3d 701, 803 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994). Public official immunity bars negligence claims against investigating officers by suspects who are eventually acquitted. *Messick v. Catawba County*, 110 NC App. 707, 718 (1993). "The North Carolina Supreme Court has never allowed a showing of gross negligence to suffice to pierce an officer's immunity, absent a statute specifically abolishing the common law immunity. *Shaw*, 13 F.3d at 803. As such, Rhoney and Sams are entitled to public official immunity on Plaintiff's state law claim. *See Scott v. Statesville Plywood & Veneer Co*., 240 NC 73, 76 (1954).

4. Plaintiff's claim for Obstruction of Public Justice is Barred by the Public Duty Doctrine.

The public duty doctrine shields police officers from claims of negligence arising out of an investigation. *Lassiter v. Cohn*, 168 N.C. App. 310, 3315 – 18 (2005). "As long as the claim is negligence, even couched in terms of 'gross,' wanton,' or 'willful,' the public duty doctrine supports the dismissal of the complaint based on the failure to state a claim." *Clark v Red Bird Cab Co*., 114 NC App. 400, 406 (1994). This doctrine also bars claims brought by suspects arrested on criminal charges. *See Moore v Cease*, No. 7:03 CV 144 FL(1), 2005 U.S. Dist. LEXIS 44888 (EDNC July 5, 2005). The Court in Moore stated:

> Negligence is the breach of a legal duty proximately causing injury. Pursuant to the public duty doctrine, police officers, in the

> performance of their law enforcement duties, do not owe a common law duty of protection to particular individuals. Here, defendant Freeman, acting as a police officer, alleged by the plaintiff to be performing law enforcement duties, owed no common law duty to plaintiff. Accordingly, plaintiff's negligence claim is misplaced."

Id at 57.

Additionally to the extent that this claim stems from an allegation that Rhoney and or Sams required Plaintiff to be tried for the murders when they knew or should have known the charges were false cannot be attributed to the officers. Rhoney and Sams were the investigatory officers – not the prosecutors. "The responsibility and authority to prosecute all criminal actions in the superior courts is vested solely in the several District Attorneys of this State." *State v. Samacho*, 329 NC 589, 593 (1991).

Rhoney and Sams also would enjoy immunity from liability to the extent this claim stems from statements made by either of them during the judicial proceeding. *Jarman v. Offutt*, 239 NC 468 (1954). This includes trials in criminal proceedings and also other proceedings of a judicial nature including arrest warrants and testimony to grand juries. *See Jones v. City of Greensboro*, 51 N.C. App. 571, 584 (1981); *Houpe v. City of Stateville*, 128 N.C. App. 334, 346 (1998). As such since neither Rhoney nor Sams can be liable for making any allegedly false statements in the obtaining of an arrest warrant, providing grand jury or trial testimony, this claim should be dismissed.

5. Plaintiff's Claims are Barred by the statute of Limitations

Plaintiff's obstruction of justice claim is controlled by N.C. Gen. Stat. § 1-52(5), the three year statute of limitations. Rhoney and Sams last act was in 1994. It would have been apparent to Plaintiff that he was harmed at least by 2003 when Plaintiff learned of the allegedly withheld

evidence and when Jude Ervin began to conduct the evidentiary hearings that lead to the judge's ruling. (Doc. 1, p. 38). Thus, Plaintiff's obstruction of justice claim should be dismissed.

CONCLUSION

For the reasons set forth in the above memorandum, Plaintiff's Complaint against Defendants Rhoney and Sams should be dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted this 2nd day of February, 2011.


/s/ Elizabeth A. Martineau
Elizabeth A. Martineau
NC Bar 26394
Martineau King PLLC
PO Box 31188
Charlotte, NC 28231
Tel: 704 247 8520
Fax: 704 943 0543
emartineau@martineauking.com
Attorney for Defendants Rhoney and Sams

<u>**CERTIFICIATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing Memorandum in Support using the CM/ECF system.   Notice of filing will be sent to all parties by operation of the Court's electronic filing system, including:

Frank Goldsmtih
Goldsmith, Goldsmith & Dews
PO Box 1107
Marion, NC 28752
frank@goldsmithdews.com
*Counsel for Plaintiff.*

Carlos E. Mahoney
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
cmahoney@gmf-law.com
*Counsel for Plaintiff.*

Jessica E. Leaven
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
jleaven@gmf-law.com
*Counsel for Plaintiff.*

William L. Hill
Frazier Hill & Fury, RLLP
PO Drawer 1559
Greensboro, NC  27402
whill@frazierlawnc.com
*Counsel for Defendant City of Hickory*

This 2nd day of February, 2011.

/s/Elizabeth A. Martineau
Elizabeth A. Martineau