GLEN EDWARD CHAPMAN, )
)
        Plaintiff, )
)
    v. )
)
DENNIS ALVIN RHONEY, )
in his individual capacity, )
ROBERT A. MULLINAX, as Public )
Administrator of the ESTATE OF )
MARK RICHARDSON SAMS, )
in his individual capacity, and )
CITY OF HICKORY, )
)
        Defendants. )
_____ )

**BRIEF BY DEFENDANT CITY OF
HICKORY IN SUPPORT OF
MOTION TO DISMISS**

## PREAMBLE

**COMES NOW** the Defendant City of Hickory, by and through Counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1(C), and hereby submits the following legal Brief in support of its Motion to Dismiss, contemporaneously filed herewith.

## STATEMENT OF THE CASE

Plaintiff's Complaint was filed on __November 3, 2010__ pursuant to the Civil Rights Act of 1871, Title 42 U.S.C. § 1983 seeking relief under the Fourteenth Amendment to the United States Constitution and, in tort, under North Carolina common law. (Complaint, D.E. #1, ¶¶ 12-14). The Complaint contains three (3) separate claims for relief structured as follows:

__First Claim for Relief__: under § 1983 against Defendants Rhoney and Sams for the alleged intentional failure to disclose material exculpatory evidence (D.E. #1 at ¶¶ 261-280);

**Second Claim for Relief**:  under § 1983 against Defendant City of Hickory for allegedly condoning the withholding of exculpatory evidence by Defendants Rhoney and Sams (D.E. #1 at ¶¶ 281-292); and

**Third Claim for Relief**:  under North Carolina common law against all three (3) Defendants for alleged obstruction of justice (D.E. #1 at ¶¶ 293-301).[1]

Plaintiff seeks compensatory damages from all three (3) Defendants, jointly and severally, for the alleged violation of his civil rights and alleged obstruction of public justice. (D.E. #1, ¶ 304).  In addition, Plaintiff seeks punitive damages against Defendant Rhoney under 42 U.S.C. § 1983 and N.C.G.S. § 1D-5.  (*Id.* at ¶¶ 305-308).  Finally, Plaintiff seeks to recover attorney's fees and costs from all Defendants pursuant to 42 U.S.C. § 1988.  (*Id.* at ¶ 309).

Plaintiff's claims all arise from alleged misconduct by Defendants Rhoney and Sams in intentionally withholding material exculpatory evidence resulting in Plaintiff's convictions  for the **1992** murders of Betty Jean Ramseur and Tenene Yvette Conley.  (D.E. #1 at ¶¶ 1-6).  As a result of those convictions, death sentences were imposed upon Plaintiff.  (*Id.*).

## STATEMENT OF THE NATURE OF THE ALLEGATIONS IN THE COMPLAINT

A.    **The Ramseur Murder Investigation**:  Plaintiff alleges that on **August 22, 1992**, the body of **31** year old Betty Jean Ramseur was found in the crawl space underneath an abandoned and partially burned home on Highland Avenue in Hickory, North Carolina. (Complaint, D.E. #1 at ¶ 65).[2]  On **August 22, 1992**, the Defendant Rhoney was assigned by the City of Hickory Police Department to be the lead Detective in the Ramseur murder investigation. (*Id.* at ¶ 74).  Plaintiff alleges that after two witnesses (Nicole Cline and her brother, Brian Cline)

---

[1] This common law tort claim is lodged against the City of Hickory based purely upon the doctrine of *respondeat superior* for alleged acts committed by Defendants Rhoney and Sams.  (D.E. #1 at ¶ 301).

[2] Throughout the remainder of this section of the Brief entitled "Statement of the Nature of the Allegations in the Complaint", the parenthetical citations refer to the Plaintiff's Complaint (D.E. #1).

were interviewed by Defendant Rhoney on **August 25 and 26, 1992** respectively, and implicated the Plaintiff in Ms. Ramseur's death, that Defendant Rhoney **"considered the Plaintiff to be the only suspect in the Ramseur murder and he focused his investigation solely upon proving the Plaintiff's guilt"**. (*Id.* at ¶ 75-83). Plaintiff alleges that Rhoney did so notwithstanding that the Clines' statements **"were not corroborated by any physical evidence, trace evidence or eyewitness testimony"**. (*Id.* at ¶84). Plaintiff contends that because Defendant Rhoney focused solely on the Plaintiff as the suspect in the Ramseur murder case that Rhoney **"intentionally withheld the following exculpatory evidence from the prosecution in the Ramseur case"**:

| <u>Type of Evidence Withheld</u> | <u>Description</u> |
|---|---|
| **September 2, 1992** Telephone Memo from Richard Allen | Memo reflecting a telephone call from Richard Allen to Defendant Rhoney. During the call, Richard Allen allegedly informed Defendant Rhoney that, on **September 1, 1992** at the Catawba County Jail, he overheard Robert ("E.R.") Frazier make incriminating statements to another inmate about killing Betty Ramseur |
| Hickory Police Department Investigative File of the **June 12, 1992** fire at the Highland Avenue home | Records in the file allegedly showed that (1) Alvin Creasman, a vagrant, likely caused the fire at the Highland Avenue house by failing to properly extinguish a cigarette, and (2) before the fire, Creasman saw a black man who did not resemble the Plaintiff – with a white woman who resembled Ramseur. |
| **December 23, 1992** Photo Lineup Identification by Alvin Creasman | On **December 23, 1992**, Alvin Creasman, at Defendant Rhoney's request, allegedly identified someone other than Plaintiff as the black man that he saw with a white woman on the morning of the **June 12** fire. |
| SBI Special Agent Ernest Bueker's Report from his Investigation of the **November 14, 1992** fire at the Highland Avenue home | The SBI Report allegedly showed that someone intentionally set fire to the Highland Avenue house on **November 14, 1992**. This evidence directly impeached the veracity of a statement by Lavar Guilliam, a 14-year-old juvenile delinquent, who testified at Trial for the State. |

(Complaint, D.E #1 at ¶ 85).

Plaintiff further alleges that the exculpatory evidence in the Ramseur case, as summarized in the chart above, was not material to the murder charge against the Plaintiff but

that it also tended to establish the Plaintiff's innocence as well as implicating other suspects and, therefore, raised reasonable doubt in the criminal case brought against him.  (*Id.* at ¶ 86).

Plaintiff alleges he was arrested by the Defendant Rhoney on **December 31, 1992**, for the murder of Betty Jean Ramseur.  (*Id.* at ¶¶ 141-42).  Plaintiff contends that based solely on the testimony of the Defendant Rhoney, the Grand Jury indicted the Plaintiff for Ms. Ramseur's murder (Catawba County Superior Court File No. 92-CRS-18186).  (*Id.* at ¶ 143).  Plaintiff denies killing Ms. Ramseur and pled not guilty to the murder charges.  (*Id.* at ¶¶ 145-46).

**B.**     **The Conley murder investigation**:  Plaintiff alleges that on **August 15, 1992**, the body of **28** year old Tenene Yvette Conley was discovered in the basement of a vacant home on First Avenue, S.E. in Hickory, North Carolina.  (Complaint, D.E. #1 at ¶ 149).  Plaintiff further alleges that on **August 15, 1992**, Defendant Sams was assigned by the City of Hickory Police Department as the lead Detective in the Conley murder investigation.  (*Id.* at ¶ 155).

According to Plaintiff, the Defendant Sams allegedly learned that two (2) known drug users reported seeing Plaintiff and Ms. Conley walking in the direction of the house on First Avenue during the early morning hours of **August 14, 1992**.  (*Id.* at ¶ 156).  A DNA analysis performed later in the case revealed the presence of the Plaintiff's sperm in Ms. Conley's vaginal area.  (*Id.* at ¶ 157).  Plaintiff alleges that based upon these pieces of information, Defendant Sams **"improperly and erroneously concluded that the Plaintiff murdered [Ms. Conley]"**; and that, thereafter, Defendant Sams allegedly considered the Plaintiff to be the only suspect in the murder and focused his investigation upon proving Plaintiff's guilt.  (*Id.* at ¶ 159).  Plaintiff contends that because Sams focused solely on the Plaintiff as the suspect, Sams **"intentionally withheld exculpatory evidence from the prosecution in the Conley case"**.  (*Id.* at ¶ 160).

Plaintiff alleges that on **February 25, 1994**, Defendant Sams left the employ of the Hickory Police Department and that Defendant Rhoney was assigned to take over as the lead Detective in the Conley murder case. (*Id.* at ¶ 161). Plaintiff alleges that Defendant Rhoney not only spoke to Defendant Sams concerning evidence gathered during both the Conley and Ramseur investigations but that Rhoney also reviewed contents of both the Conley Police investigative file maintained by Defendant Sams as well as the written materials that Sams had produced to the District Attorney's Office. (*Id.* at ¶ 164).

Plaintiff contends that as a result of Rhoney's review of this information, he allegedly discovered that Sams had withheld exculpatory evidence from the District Attorney. (*Id.*, ¶ 165). Plaintiff further asserts that because Rhoney also **"improperly and erroneously believed the Plaintiff murdered Conley as well as Ramseur"** that he **"continued to intentionally withhold exculpatory evidence from the Prosecution in the Conley case"**. (*Id.* at ¶¶ 166-67).

According to the allegations in the Complaint, Defendants Sams and Rhoney intentionally withheld the following exculpatory evidence from the District Attorney in the Conley murder case:

| **Type of Evidence Withheld** | **Description** |
| --- | --- |
| Report by Lieutenant Hamilton from an Interview with Mike Cosby on **August 15, 1992** | Mike Cosby (Conley's housemate) allegedly told Lieutenant Hamilton that Conley was last seen on Friday evening, **August 14, 1992**, getting into a vehicle with Billy Hull and George "Ice" Reinhardt. Cosby also told Hamilton that: (1) Conley had stolen a ring from Hull and sold it for cocaine; (2) Hull had been acting suspiciously; and (3) Hull was involved in a similar murder **4-5** years ago. |
| Handwritten notes by Defendant Sams from an interview with Mike Cosby on **August 27, 1992** | Mike Cosby allegedly told Defendant Sams that: (1) Conley had stolen a ring from Hull and pawned it for dope; (2) Gene Robinson saw Conley getting into a car with Billy Hull and George Reinhardt; (3) Hull was the last one seen with Nellie Long before she was raped and strangled **4-5** years ago; and (4) Hull had been acting suspiciously. |
| Report by Sergeant Carlsen | Carl Geter allegedly told Sergeant Carlsen that Billy Hull and Ice |

| from an interview with Carl Geter on **September 2, 1992** | Man had Conley killed.  Geter also reported that Hull and Iceman were with Conely on Friday, **August 14, 1992**, and a third unknown black man – who was not the Plaintiff – killed Conley when she would not have sex with him. |

(Complaint, D.E. #1 at ¶ 168).

Plaintiff asserts that based solely upon the testimony of the Defendant Sams, that the Grand Jury indicted the Plaintiff on **August 16, 1993** for the murder of Tenene Yvette Conley (Catawba County Superior Court File No. 93-CRS-11980).  (*Id.* at ¶¶ 203-04).  Plaintiff denied involvement in Ms. Conley's murder and pled not guilty to the criminal charge.  (*Id.*, ¶¶ 205-06).

**C.**     **Plaintiff's Double Murder Trial in State Superior Court**:  Plaintiff alleges that during the **October 31, 1994** session of Superior Court in Catawba County, he was tried by Jury on the charges of murdering Ms. Ramseur and Ms. Conley, which said cases had been joined for Trial at the request of the Prosecutor.  (Complaint, D.E. #1, ¶¶ 220-21).  Plaintiff further alleges that Defendant Rhoney attended the entire Trial and assisted the Prosecutor with the presentation of evidence in both the Ramseur and Conley cases.  (D.E. #1, ¶ 224).  In addition, Plaintiff asserts Defendants Rhoney and Sams both testified against him during the Trial.  (*Id.* at ¶ 225).

On **November 10, 1994**, the Jury found the Plaintiff guilty of First Degree Murder in both cases and, five days later, recommended that the Plaintiff be sentenced to death in each case.  (*Id.* at ¶¶ 226-27).  On **November 16, 1994**, the Presiding Judge imposed death sentences upon the Plaintiff in both murder cases.  (*Id.* at ¶ 228).

A summary of the State's evidence and the Prosecution's theories of guilt in the Ramseur murder case are included in the allegations contained in the Plaintiff's Complaint.  (*Id.* at ¶¶ 229-30).  Plaintiff contends that Defendant Rhoney knew from his investigation **"that the State's theories of Plaintiff's guilt in the Ramseur murder case were false and based upon misleading evidence…"**.  (*Id.* at ¶ 231).  In addition, Plaintiff alleges that Detective Rhoney

failed to alert the District Attorney that his theories and evidence were false and, furthermore, that Rhoney allegedly **"lied under oath in order to hide his intentional failure to disclose the Ramseur exculpatory evidence"**. (*Id.* at ¶ 233).

A summary of the State's evidence and the Prosecution's theories of guilt in the Conley murder case are included in the allegations contained in the Plaintiff's Complaint. (*Id.* at ¶¶ 234-35). Plaintiff contends that Defendants Rhoney and Sams knew the State's theories of the Plaintiff's guilt in the Conley case were false because the Hickory Police Department's investigative file contained evidence that could have exculpated the Plaintiff. (*Id.* at ¶ 236). Plaintiff further alleges that **"In order to hide their intentional failure to disclose the Conley exculpatory evidence"** that Defendants Rhoney and Sams did not inform the Prosecutor that his theories were false and flawed. (*Id.* at ¶ 237).

According to Plaintiff, during the pendency of the investigations and his criminal proceedings in the Ramseur and Conley matters, the Catawba County District Attorney maintained an "open file" policy with respect to discovery materials in pending criminal cases. (*Id.* at ¶¶ 52-53). Plaintiff alleges that Defendants Rhoney and Sams withheld the aforementioned exculpatory evidence from the District Attorney's Office so that it would not be available for review by the Plaintiff and his Criminal Defense Counsel. (*Id.*).

D. **Plaintiff's Post-Conviction Proceedings and Release**: Following the death sentences imposed upon the Plaintiff on **November 16, 1994**, he was imprisoned on Death Row. (Complaint, D.E. #1 at ¶ 34). On **December 8, 1995**, Plaintiff's convictions and death sentences were affirmed by the North Carolina Supreme Court and, on **June 24, 1996**, his Petition for a Writ of Certiorari was denied by the United States Supreme Court. (*Id.* at ¶¶ 249-50). Subsequently, Plaintiff filed an initial Motion for Appropriate Relief (MAR) on **April 23, 1997**,

as well as an Amended MAR and Second Amended MAR on **June 13, 2003** and **November 10, 2003** respectively. (*Id.* at ¶ 252). According to Plaintiff, a total of **six** Evidentiary Hearings were conducted by State Superior Court Judge, Robert C. Ervin, between **December 2003** and **May 2006.** (*Id.* at ¶253-54). The Complaint asserts that on **November 6,** 2007, Judge Ervin issued a **186** page Order allowing the Plaintiff's Motion for Appropriate Relief vacating Plaintiff's convictions on both the Ramseur and Conley murders and granting him a new Trial on all charges. (*Id.* at ¶ 255). Plaintiff alleges that Judge Ervin's decision was based upon a number of factors including the allegedly false testimony offered by Defendant Rhoney during the Plaintiff's murder trial and Rhoney's decision to allow the State to present false evidence and make false arguments against him. (*Id.* at ¶ 257).

Plaintiff alleges that on **April 2, 2008**, the Catawba County District Attorney dismissed the murder charges against the Plaintiff and, after nearly **13** years in Prison, Plaintiff was released from custody. (*Id.* at ¶¶ 258-60).

E.     **Plaintiff's Allegations against City of Hickory**: As for the Defendant City of Hickory, Plaintiff openly acknowledges that before his conviction on **November 10, 1994**, the City's Police Department had **"an official policy…requiring Police Officers, upon the initiation of criminal charges, to prepare and submit a prosecution summary to the District Attorney's Office along with copies of all typed reports concerning the case, including Incident Reports, Supplemental Reports, Arrest Reports, Lab Reports, and Medical Examiner and Autopsy Reports."** (Complaint, D.E. #1, ¶ 282). Plaintiff further acknowledges that the aforementioned materials, once produced by Hickory Police Officers, would be available to criminal Defendants and their Counsel under the D.A.'s "open file" policy. (*Id.* at ¶ 284).

Plaintiff's singular allegation against the City is that under the City's alleged **"official policy"**, Police Officers were permitted to **"withhold handwritten notes, telephone memos and pending lab work from the Prosecution"** and that Officers **"were permitted to destroy their handwritten notes after the preparation of a typewritten report"**. (*Id.* at ¶ 285). Plaintiff contends that as a result of this Policy, **"handwritten notes, telephone memos and pending lab work compiled by the City of Hickory Police Officers in investigations would not be available for inspections by criminal Defendants and their Counsel even when the materials contained exculpatory evidence."** (*Id.*at ¶ 286). Plaintiff contends that at as a result of the Police Department's official policy, its Officers withheld exculpatory evidence from the District Attorney's Office in an effort to prevent it from being produced to criminal Defendants and their legal Counsel in violation of the Due Process Clause of the Fourteenth Amendment. (*Id.* at ¶ 287). At the crux of the Plaintiff's claims against the City is the following allegation:

> **The custom of withholding exculpatory evidence by Police Officers at Defendant City of Hickory was, <u>upon information and belief</u>, so persistent and widespread that it was the Police Department's standard operating procedure on and before <u>November 10, 1994</u>.**

(Complaint, D.E. #1 at ¶ 288--underscoring added for emphasis). Plaintiff further alleges that the City **"condoned the custom at the Police Department of withholding exculpatory evidence from the Prosecution and that Defendants Rhoney and Sams acted in accordance with this custom when they [allegedly] intentionally withheld material exculpatory evidence from the Prosecution in the Ramseur and Conley cases."** (*Id.* at ¶¶ 289-90).

## <u>LAW AND ARGUMENT</u>

### A.    <u>STANDARD OF REVIEW</u>

A Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) scrutinizes the legal sufficiency of the claims contained in the Complaint. "[W]hen ruling on a Defendant's Motion

to Dismiss, a Judge must accept as true all of the factual allegations contained in the Complaint." *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.E.2d 1081 (2007). Nonetheless, the Court "need not accept the legal conclusions as drawn from the facts" and "need not accept, as true, unwarranted inferences, unreasonable conclusions or arguments". *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). Although pleadings must be liberally construed, "the Complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). Moreover, a Plaintiff must allege facts sufficient to support each and every element of his claim. *See Bass v. E.I. DuPont de Nemours and Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).

**B.      PLAINTIFF'S FIRST CLAIM FOR RELIEF (¶¶ 261- 79):**

**1.      To the extent, if any, Plaintiff attempts to assert the Federal § 1983 claims contained in his First Claim for Relief against the City of Hickory, they are barred by the applicable Statutes of Limitation and Repose.**

A reading of the Plaintiff's First Claim for Relief indicates that this cause is directed only against Defendants Rhoney and Sams and that the Plaintiff does not intend to assert this claim against the City of Hickory. (*See* D.E. #1 at ¶¶ 261- 79). However, in light of the *respondeat superior* language contained in portions of the Complaint (see, e.g., ¶ 62), and out of a corresponding abundance of caution, the City will address this First Claim to the extent it could be interpreted as applying to the City.

In response to Plaintiff's State law claim for obstruction of justice, Defendants Rhoney and Sams raised the defense of the Statute of Limitations in their Motion to Dismiss and supporting Brief. (D.E. #17-1, p. 12). Defendant City of Hickory concurs and further submits

that the Statute of Limitations also operates in bar of Plaintiff's Federal law claims under § 1983. The City also contends the Statute of Repose bars Plaintiff's Federal **and** State law claims.

"The statute of limitations for a claim under 42 U.S.C. § 1983 is borrowed from State law." _Nasim v. Warden, Maryland House of Correction_, 64 F.3d 951, 955 (4th Cir.1995), _cert. denied_, 516 U.S. 1177, 116 S.Ct. 1273, 134 l.E.2d 219, _reh'g denied_, 517 U.S. 1163, 116 S.Ct. 1561, 134 L.E.2d 661 (1996).  Similarly, because Congress did not statutorily establish a body of tolling rules in § 1983 cases, the Federal Courts look to the State law rules for an analogous cause of action.  _See Board of Regents of University of State of N. Y. v. Tomanio_, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 1794-95, 64 L.E.2d 440 (1980).

In this instance, Plaintiff identifies the corresponding State law remedy as the common law tort of obstruction of justice.  (Complaint, D.E.#1 at p. 46).  As stated by the North Carolina Court of Appeals in _Self v. Yelton_, -- N.C.App.--, 688 S.E.2d 34, 38-39 (2010), actions for "[f]raud and obstruction of justice must be brought within three years from the time the cause of action accrues, and an action accrues when a Plaintiff becomes aware or reasonably should have become aware of the fraud or harm." (citing N.C.G.S. § 1-52(9) and (16) (2009)) (underscoring added for emphasis).[3]

Here, Plaintiff raised the issue of the alleged intentional withholding of exculpatory evidence by Defendants Rhoney and Sams in his Second Amended Motion for Appropriate Relief ("MAR") filed on **November 10, 2003** in the State Court, post-conviction proceedings. A copy of the Second Amended MAR is attached as Exhibit No. 1 to this Brief.  (See, e.g., Ex.

---

[3] N.C.G.S. § 1-52(16) reads as follows:  "Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c) shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."

No. 1 at ¶¶ 51, 60, 61, 64, 70, 72, 88 and 96).[4]  As such, it is clear the Plaintiff was aware of the

alleged obstruction as early as **November 2003,** if not earlier, and that the period of limitations

began to accrue at that juncture.   Plaintiff did not, however, file the Complaint in this Civil

action until **November 3, 2010** (D.E. #1at p. 1) which was well more than **(3)** years (nearly **7**

years, in fact) after learning of the alleged incidents which form the basis for his Civil cause.

　　In addition, the City of Hickory submits that the applicable Statute of Repose is contained

within that portion of N.C.G.S. § 1-52(16) which states: ". . . Provided that no cause of action

shall accrue <u>more than 10 years from the last act or omission of the defendant giving rise to the</u>

<u>cause of action</u>." (underscoring added for emphasis).  A reading of the instant Complaint,

suggests that the last act or omission allegedly committed by Defendants Rhoney and/or Sams

would have occurred at the time of the Plaintiff's murder Trial in **November 1994**.  (*See* D.E. #1

at ¶¶ 220-37).  This Civil action was not, however, initiated until some **sixteen (16)** years later in

**November 2010**.  For the foregoing reasons, the Defendant City of Hickory contends that

Plaintiff's Federal law claims under § 1983 as well as his State law obstruction of justice claims

are time barred.[5]

　　**2.**　　**To the extent, if any, Plaintiff attempts to assert the Federal § 1983 claims**
**contained in his First Claim for Relief against the City of Hickory based upon a theory of**
***respondeat superior*, such claims would fail as liability under § 1983 cannot be premised**
**upon the doctrine of *respondeat superior*.**

　　As stated above, the Defendant City of Hickory does not perceive that Plaintiff intended

to press his First Claim for Relief under § 1983 against it.  To the extent the Complaint could be

---

[4]  The Court may examine matters of public record when considering a Rule 12(b)(6) Motion without
converting it to a Summary Judgment Motion.  <u>Cinel v. Connick</u>, 15 F.3d 1338, 1342 n.6 (5th Cir. 1994) cert. denied,
513 U.S. 868, 115 S.Ct. 189, 130 L.E.2d 122 (1994).  The Exhibits to this Brief are all matters of public record.

[5]  As Officers of the Court, Counsel for the City feel obligated to alert the Court that the issue of a potential
tolling of the applicable Statutes of Limitation and Repose could come into play here as Judge Ervin's Order
granting the Plaintiff a new Trial was not issued until **November 6, 2007**.  We have researched the issue, however,
and could find no North Carolina case which would suggest the reasoning above is misplaced.

otherwise interpreted, it is manifest that § 1983 liability cannot be imputed to a municipality through the doctrine of *respondeat superior*. *International Ground Transp. v. Mayor and City Council Of Ocean City, MD*, 475 F.3d 214, 220 (4th Cir. 2007).

**C.     PLAINTIFF'S SECOND CLAIM FOR RELIEF (¶¶ 281- 92):**

**The Plaintiff's Second Claim for Relief under § 1983 fails to state a valid custom, policy or practice claim under *Monell* against the City of Hickory for several reasons including, but not limited to the following:**

**1.     Plaintiff's claims are barred by the Statutes of Limitation and Repose;**

This contention has already been discussed in Section B.1 on pages 10 – 12 of this Brief above. The moving Defendant incorporates that case law and argument here in support of its position that the Second Claim for Relief under § 1983 is also time barred.

**2.     To the extent the Court grants the Motion to Dismiss filed by the Defendants Rhoney and Sams (D.E. #17), the claims against the City of Hickory would fail as without underlying liability on the part of the Detectives, there can be no supervisory liability on the part of the City.**

As reflected above, Co-defendants Rhoney and Sams filed a Motion to Dismiss on **February 2, 2011**. (D.E. #17). If the Court grants that Motion, then the claims against the City must also fail because in the absence of any underlying liability on the part of the two Detectives, no liability can rest with the City. *Mann v. Taser International, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009), *reh'g and reh'g en banc denied*, -- F.3d – (11th Cir. 2010) (holding that supervisory liability claims against the Office of Sheriff for alleged failure to properly train must necessarily fail when underlying claims for alleged Constitutional violations by Sheriff's Deputies were dismissed).

**3.     Plaintiff has failed to sufficiently allege that he has suffered a Constitutional deprivation as a direct and proximate result of any custom, policy or practice instituted by the City of Hickory. On the contrary, the allegations in Plaintiff's Complaint allege that he was harmed when Detectives Rhoney and Sams allegedly acted outside the scope of their official duties and in violation of the City's established policies and procedures; Plaintiff's**

**claims against the City of Hickory also fail because the allegations in the Complaint are conclusory in nature and do nothing more than allege a single act or isolated instances of misconduct on the part of others which, in and of themselves, are insufficient to predicate § 1983 liability against the City:**

The City of Hickory acknowledges that municipal liability can be triggered by an unlawful policy formally adopted by an official with decision-making authority **or** implemented through "custom**"** even though the policy had not received formal approval. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). With respect to the latter, the *Monell* Court held that it must "be so permanent and well-settled as to constitute a custom or usage with the force of law". *Id.*

In the case now before the Court, it is important to note that Plaintiff openly acknowledges that the Hickory Police Department's established policy required its Police Officers, **"upon the initiation of criminal charges, to prepare and submit a prosecution summary to the District Attorney's Office along with copies of all typed reports concerning the case, including Incident Reports, Supplemental Reports, Arrest Reports, Lab Reports, and Medical Examiner and Autopsy Reports."** (Complaint, D.E. #1, ¶ 282). Plaintiff further agrees that the aforementioned materials, once produced by Hickory Police Officers, were made available to criminal Defendants and their Counsel under the District Attorney's "open file" policy. (*Id.* at ¶ 284). There is nothing legally deficient with that portion of the Department's policy. In fact, it seems quite consistent with the requirements imposed by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963) and Plaintiff does not allege otherwise.

Plaintiff's lengthy Complaint contains nothing more than conclusory allegations that an unlawful Departmental policy persisted prior to the Plaintiff's conviction. In particular, Plaintiff claims that as a result of the Police Department's official policy, its Officers withheld

exculpatory evidence from the D. A.'s Office to prevent it from being produced to criminal

Defendants in violation of the Due Process Clause of the Fourteenth Amendment. (*Id*. at ¶ 287).

At the heart of Plaintiff's claims against the City is this **<u>singular</u>** allegation:

> **The custom of withholding exculpatory evidence by Police Officers at Defendant City of Hickory was, <u>upon information and belief</u>, so persistent and widespread that it was the Police Department's standard operating procedure on and before <u>November 10, 1994.</u>** (Complaint, D.E. #1 at ¶ 288--underscoring added for emphasis).

(Complaint, D.E. #1 at ¶ 288) (underscoring added for emphasis).

It is noteworthy, that Plaintiff makes this critical allegation **"upon information and belief"**. According to the Complaint, Plaintiff submitted an original MAR which was then twice amended; Superior Court Judge Ervin presided over **<u>six (6)</u>** separate post-conviction hearings over a **<u>2.5 year</u>** period; testimony was presented from **<u>49</u>** witness for the Plaintiff and **<u>3</u>** for the State; and Counsel for the Plaintiff and Government tendered **<u>189</u>** exhibits to the Superior Court for consideration. (Complaint, D.E. #1 at ¶¶ 253-54). Despite all the time devoted and all the evidence reviewed and analyzed through those exacting proceedings, Plaintiff is unable to point to a single other instance in his Complaint where another criminal Defendant was unlawfully convicted due to exculpatory evidence being allegedly withheld by Hickory Police Officers. Instead, the only allegation is that **"upon information and belief"** a widespread custom and pattern of such misconduct took place. In fact, the only instance Plaintiff can point to where such a situation manifested itself was in his own criminal proceedings.

As recognized by the Fourth Circuit, "A single act or isolated instances are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability. *<u>Wellington v. Daniels</u>*, 717 F.2d 932, 936 (4th Cir. 1983). *Accord*, *<u>Spell v. McDaniel</u>*, 824 F.2d 1380, 1381 (4th Cir. 1987), *cert. denied* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988)

(holding that "proof of a single violation will not support the inference that the violation resulted from a municipal 'policy'**…"**).  Because Plaintiff has not alleged more than a single act or isolated violation, he has failed to state a claim against the City under § 1983.

The Complaint is also bereft of any allegations that the City specifically knew or should have known that this allegedly widespread practice was taking place.  As such, it is difficult to understand upon what factual basis Plaintiff asserts that this purportedly unconstitutional custom and practice was "condoned" by the City.  (*See* Complaint at ¶ 289)

The City contends that Plaintiff's allegations against it on this issue lack a factual basis and are conclusory in nature. As such, they are insufficient to establish municipal liability under § 1983.  *See Ashcroft v. Iqbal*, 556 U.S. --, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009);

It is also noteworthy that although Plaintiff cites Judge Ervin's Order in several places in his Complaint, he never specifically alleges the Judge found that this widespread practice of withholding exculpatory evidence manifested itself in cases other than the Plaintiff's.  Nor does Plaintiff allege that Judge Ervin found, as fact, that such instances (**if** they occurred at all) were a proximate result of the Police Department's alleged policy.  (See, e.g., Complaint at ¶¶ 255-57).

The City further asserts that Plaintiff's allegations fail to sufficiently allege that the Police Department's purported policy was the **proximate cause** of his Constitutional injury as is his burden when pleading a § 1983 claim.  *See Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994) (holding that § 1983 litigant must allege and prove the existence of an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff).  In fact, in his Complaint, Plaintiff specifically alleges that Detectives Rhoney and Sams withheld exculpatory evidence in direct violation of established City policy.  For example, in Paragraphs 294 – 296 of

the Complaint, Plaintiff openly asserts that Detective Rhoney destroyed line-up photographs; destroyed a required supplemental report or willfully failed to prepare a required report; and that Detective Sams intentionally prepared false reports. (D.E. #1 at ¶¶ 294 –96). Such misconduct, in the event it ever occurred, would not have been permissible under the policy promulgated by the Police Department. (*See* Complaint at ¶¶ 284-85).

Along those lines, it is also legally significant that Plaintiff has elected to sue Detectives Rhoney and Sams solely and exclusively in their **individual** capacities as the Federal Courts have recognized that "[g]enerally, individual capacity suits involve actions taken by Governmental agents outside the scope of their official duties." *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (underscoring added for emphasis). This provides further support for the argument that to the extent Plaintiff has a § 1983 claim at all, it arises not from any policy instituted by the City's Police Department but by wholly independent actions and decisions by others which were outside the scope of their employment duties for the City.[6]

### D.     **PLAINTIFF'S THIRD CLAIM FOR RELIEF (¶¶ 293 - 301):**

#### 1.     **The Statutes of Limitations and Repose bar the obstruction of justice claim:**

This contention has already been discussed in Section B.1 on pages 10 – 12 of this Brief above. The moving Defendant incorporates that case law and argument here in support of its position that Plaintiff's Third Claim for obstruction of justice under State law is also time barred.

#### 2.     **To the extent the Court grants the Motion to Dismiss filed by the Defendants Rhoney and Sams (D.E. #17), the obstruction of justice claims against the City of Hickory should fail as without underlying liability on the part of the Detectives, liability cannot be imputed to the City based upon the doctrine of *respondeat superior*.**

---

[6] For clarification, the City of Hickory **is not** acknowledging nor conceding that the Plaintiff has asserted a valid claim against Detectives Rhoney or Sams. Instead, and for purposes of this Motion, the City is only taking the specific allegations made by the Plaintiff in his Complaint (as it is required to do at the Rule 12(b)(6) stage) and demonstrating why Plaintiff has failed to state a claim for municipal liability.

A similar contention has already been discussed in Section C.2 on page 13 of this Brief above.  Under the doctrine of *respondeat superior*, the liability of a master for actions committed by a servant is purely derivative.  *Queen City Coach Co. v. Burrell*, 241 N.C. 432, 435, 85 S.E.2d 688, 691 (1955).  As such, if the Court grants the Motion of Co-Defendants Rhoney and Sams to dismiss the Third Claim for Relief for the common law tort of obstruction of justice against them, then liability for the Detectives' actions cannot be imputed to the City based upon the doctrine of *respondeat superior*.

3.      **Sovereign Immunity bars the obstruction of justice claim against the City;**

"As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the State, its Counties, and its public officials sued in their official capacity." *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 683, 529 S.E.2d 458, *461 review denied*, 352 N.C. 673, 545 S.E.2d 423 (2000) (quoting *Messick v. Catawba County*, 110 N.C. App. 707, 714, 431 S.E.2d 489, 493 *rev. denied,* 334 N.C. 621, 435 S.E.2d 336 (1993)).  The doctrine of sovereign immunity also bars official capacity claims against municipalities and their officials, including Police Officers, performing governmental functions. *Williams v. Holsclaw*, 128 N.C.App. 205, 208, 495 S.E.2d 166, 168, *aff'd*, 349 N.C. 225, 504 S.E.2d 784 (1998).

The doctrine of sovereign immunity bars not only negligence claims against public officials acting in their official capacity **but gross negligence claims as well**.  *See Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002), *appeal dismissed and review denied,* 357 N.C. 66, 579 S.E.2d 576 (2003) (affirming dismissal of gross negligence claims against the State, State agencies, and State officials acting in their official capacity based upon failure to allege or prove a waiver of sovereign immunity).

The City of Hickory did, in fact, purchase liability insurance policies to provide coverage for the law enforcement activities of its Police Department during the **1990's**.  Attached to this Brief as Exhibits 2 through 7, respectively, are complete copies of the insurance policies issued to the City for the following periods:

| Exhibit No. | Insurer | Policy No. | Policy Period |
|---|---|---|---|
| Ex. No. 2: | National Casualty Co. | PLO 0201066 | 9.2.91 - 9.2.92 |
| Ex. No. 3: | National Casualty Co. | PLO 0301072 | 9.2.92 - 9.2.93 |
| Ex. No. 4: | General Star Nat' Ins. Co. | NYA 805237 | 9.2.93 - 9.2.94 |
| Ex. No. 5: | National Casualty Co. | PLO 0440704 | 9.2.94 - 9.2.95 |
| Ex. No. 6: | National Casualty Co. | PLO 0503393 | 9.2.95 - 9.2.96 |
| Ex. No. 7: | National Casualty Co. | PLO 0540714 | 9.2.96 - 9.2.97[7] |

The City also acknowledges that sovereign immunity can be waived through the purchase of liability insurance.  *Satorre v. New Hanover County Bd. of Com'rs.* 165 N.C.App. 173, 176, 598 S.E.2d 142, 144 (2004), *rev. denied,* 359 N.C. 282, 608 S.E.2d 770 (2005) However, in that event**, "immunity is waived <u>only to the extent</u> that the [municipality] is indemnified by the insurance contract from liability from the acts alleged."** *Id*. (quoting *Combs v. Town of Belhaven*, 106 N.C.App. 71, 73, 415 S.E.2d 91, 92 (1992)) (underscoring added for emphasis).

Although the City of Hickory purchased policies of liability insurance for the period from **September 2, 1991** through **September 2, 1997**, there has been no waiver of the defense of sovereign immunity as to the Plaintiff's obstruction of justice claim under State tort law.  Why? Because the provisions of the subject insurance policies may not indemnify nor cover the Defendants for such a claim.  More specifically, the civil tort of obstruction of justice (which has

---

[7] The National Casualty insurance policies attached hereto as Ex. Nos. 2, 3, 5, 6 and 7 have all been certified or otherwise authenticated by the insurer as evidenced by the Exhibits themselves.  The lone insurance policy provided by General Star and attached as Ex. No. 4 was provided to Counsel for the City of Hickory on **February 8, 2011** by the Attorneys for General Star.  At the time of this writing, a certified copy had not yet been made available.  A certified copy will, however, be provided to Plaintiff's Counsel and the Court immediately upon its receipt.

its roots in the criminal common law) has been described as f "any act which prevents, obstructs, impedes or hinders public or legal justice." _Grant v. High Point Regional Health System_, 184 N.C.App. 250, 253, 645 S.E.2d 851, 854 (2007), _review improvidently granted_, 362 N.C. 502, 666 S.E.2d 757 (2008) (quoting _In Re Kivett_, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983)). The City of Hickory submits that it is not enough to simply commit an "act". Instead, a particular _mens rea_ is required, to wit: a malicious intent to obstruct justice; s_ee Blackburn v. Carbone_, 2010 WL 5421469 at *6, n. 6 (concurring opinion)[8]; and a deliberate intent to deceive and defraud; _see State v. Clemmons_, 100 N.C.App. 286, 293, 396 S.E.2d 616, 619 (1990). Although the City denies that it or Detectives Rhoney or Sams engaged in such misconduct, this is precisely the type of activity that Plaintiff has alleged in his Complaint against the two Detectives. (_See_, e.g., D.E. #1 at ¶¶ 262-64, 271-73 and 298).

This brings us back to the insurance policies in question. The three (3) insurance contracts issued by National Casualty covering the periods from **9.2.1991 – 1992**, **9.2.1992 – 1993** and **9.2.1994 – 1995** attached to this Brief as Exhibit Nos. 2, 3 and 5, respectively, contain the following exclusionary provision:

**This policy does not apply: …**

    **7)    To damages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any INSURED or claims of injury arising out of the acts of fraud committed by or at the direction of the INSURED with affirmative dishonesty or actual intent to deceive or defraud.**

(Ex. No. 2 at Bates-stamped p. 4; Ex. No. 3 at p. 5; Ex. No. 5 at p. 5)

**\*\*\*\*\***

---

[8] A copy of the North Carolina Court of Appeals recent opinion in _Blackburn v. Carbone_ is attached to this Brief as Ex. No. 8.

The two (2) insurance contracts issued by National Casualty covering the periods from

**9.2.1995 – 1996** and **9.2.1996 – 1997** attached to this Brief as Exhibit Nos. 6 and 7, respectively,

contain the following exclusionary provisions:

> **The Company shall not be obligated to make any payment nor to defend any SUIT in connection with any claim made against the Insured …**
>
> **2.      Arising out of the deliberate violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of the INSURED;**
>
> **3.      Brought about or contributed to by fraud or dishonesty of an INSURED, however, notwithstanding the foregoing, the INSURED shall be protected under the terms of this policy, as to any claims upon which SUIT may be brought against them by reason of any alleged fraud or dishonesty on the part of any INSURED, unless a judgment or other final adjudication thereof adverse to such INSURED shall establish that acts of active or deliberate dishonesty or fraud committed by such INSURED was material to the cause of action so adjudicated;**

(Ex. No. 6 at Bates-stamped p. 7; Ex. No. 7 at p. 7).

*****

The single insurance contract issued by General Star covering the period from **9.2.1993 – 1994** attached to this Brief as Exhibit No. 3, contains the following exclusionary provisions:

> **This insurance does not apply to: . . .**
>
> **f.      Claims or "suits" for damages arising out of the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of any insured;**
>
> **g.      Claims or "suits" for damages arising out of acts of fraud committed by or at the direction of the insured with affirmative dishonesty or actual intent to deceive or defraud;**

(Ex. No. 3 at Bates-stamped p. 8). [9]

---

[9] For the Court's information, both National Casualty and General Star are providing a legal defense to the City of Hickory and Detectives Rhoney and Sams under a complete reservation of rights to disclaim coverage based, in large part, upon the insurance policy provisions quoted above. While the City does not concede that the two insurers may legally deny coverage, the position taken by the insurers and the policy exclusions set forth above squarely raise the issue of sovereign immunity at this juncture. To be clear, the City raises this defense only with

*****

In the case of *Patrick v. Wake County Dep't of Human Services*, 188 N.C. App. 592,  655 S.E.2d 920 (2008), the North Carolina Court of Appeals held:  "A governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." 188 N.C. App. at 596, 655 S.E.2d at 923.  In *Patrick*, the Defendant governmental entity had purchased liability insurance, but the Policy included the following "Governmental Immunity Endorsement":

> **This Policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statute § 153A-435.  Accordingly, as subject to this Policy and the Limits of  Liability shown on the Declarations, this Policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense is asserted, a Court of competent jurisdiction determines the defense of governmental immunity not to be applicable.**

*Patrick*, 188 N.C. App. at 596, 655 S.E.2d at 923.

In the *Patrick* case, the North Carolina Court of Appeals found the language in the subject endorsement to be clear and unambiguous **and** to expressly exclude coverage for the Plaintiff's claims against the County agency and the official capacity claims against its employees. *Id. at* 596-97, 655 S.E.2d at 923-24.  Because the endorsement excluded such coverage, the Court held the Defendants **did not** waive sovereign immunity through the purchase of the Policy and that the defense of sovereign immunity clearly applied **in bar of** the Plaintiff's official capacity claims. *Id.*

---

respect to the Third Claim for Relief under State law as sovereign immunity is inapplicable to the Federal claims under § 1983.  Moreover, the § 1983 claim against the City, as set forth in the Second Claim for Relief, does not appear to be premised upon a theory that the City acted with the "intent" to deceive the Plaintiff or "intent" deprive him of his Constitutional rights.  As such, the City takes the position that the aforementioned insurance policy exclusions would be altogether inapplicable to the second cause.

Although the exclusionary language in the polices issued to the City of Hickory by National Casualty and General Star do not contain the endorsement in the *Patrick* case, the City submits that the legal rationale here is the same.  To the extent it is determined that Plaintiff's tort claim for obstruction of justice falls within the ambit of the type of activity described in the instant policy provisions set out above, coverage would be excluded.   In that event, the doctrine of sovereign immunity would shield the City of Hickory from any liability under Plaintiff's Third Claim for Relief.

Recently, a number of North Carolina Appellate cases involving insurance policy endorsements similar to that in *Patrick* have been decided.  In each case, the North Carolina Appellate Court found that the purchase of liability insurance, in and of itself, **did not** waive the defense of sovereign immunity and claims against the governmental entity and/or government officers **in their official capacities** were dismissed **with** prejudice.  *See*, e.g., *Estate of Earley v. Haywood County Department of Social Services*, -- N.C.App.  --, 694 S.E.2d 405, 409 (2010) (holding that "the unambiguous language of the [Haywood County] insurance contract" specifically, the language, stating that there was 'no coverage … as to any claim for which the Covered Person is protected by sovereign immunity and /or governmental immunity under North Carolina law,' … exclude[ed] coverage for [the wrongful death] claims as that asserted by Plaintiff."  Thus, the "Defendant did not waive governmental immunity from Plaintiff's claim through the purchase of the insurance policy.")   *Owen v. Haywood County*, -- N.C. App. -- 697 S.E. 2d 357, 360 (2010) (holding the exclusionary provision in the County's policy was "materially indistinguishable from the provisions in *Patrick* and *Estate of Earley*," and that the Plaintiff's claims against the defendants in their official capacities for the **intentional torts** of assault, abuse of process, false arrest,  and malicious prosecution were barred by sovereign

immunity)[10]; and _Wright v. Gaston County_, -- N.C. App. --, 698 S.E.2d 83, 88-90 (2010) (also

holding the exclusionary provision in the County's policy was "materially indistinguishable from

the provisions in _Patrick_ and the _Estate of Earley_," and thus, upholding the Trial Court's

decision to grant the Defendants' Motion to Dismiss the Plaintiff's claims against them in their

official capacities for wrongful death, medical malpractice, reckless infliction of emotional

distress, negligent infliction of emotional distress and _res ipsa loquitur_, based upon sovereign

immunity).[11]

> **4.     Plaintiff's obstruction of justice claim as it pertains to the City of Hickory
> fails as vicarious liability based upon respondeat superior will not arise when an employee
> has acted outside the course and scope of his employment**:

As argued above, the fact that Plaintiff has sued the two Detectives exclusively in their

individual capacities, is legally tantamount under § 1983 case law to an allegation that the

Detectives acted outside the course and scope of their official duties. _Nix v. Norman_, _supra_, 879

F.2d at 431. Plaintiff's Third Claim for Relief for obstruction of justice as it pertains to the City

of Hickory is grounded solely upon the doctrine of _respondeat superior_. The City submits that

when an employee is alleged to have acted outside the scope of his or her employment (as is the

case here according to Plaintiff's Complaint), the doctrine will not sustain a vicarious liability

claim against the employer. _See Parker v. Erixon_, 123 N.C.App 383, 391, 473 S.E.2d 421, 427

(1996). As such, the very nature of the allegations in Plaintiff's Third Claim for Relief requires

that this claim be dismissed as to this municipal Defendant.

---

[10] The _Owen_ case is particularly significant here in that it applied sovereign immunity to bar claims based on **intentional** misconduct not just negligence or gross negligence.

[11] _See also Lunsford v. Renn_, -- N.C. App. -- 700 S.E.2d 94, 100-01 (2010) (applying the doctrine of sovereign immunity based upon Policy endorsement excluding coverage for claims to which the doctrine applied and awarding Summary Judgment on behalf of the Defendants on all of the Plaintiffs' claims under **both** official and individual capacity theories in a wrongful death case involving a police pursuit).

**5.      Plaintiff's obstruction of justice claim as it pertains to the City of Hickory fails to establish that the alleged custom, policy or practice initiated by the City of Hickory was made by a final decision-maker or policy-maker possessing the requisite *mens rea*, to-wit:  an intent to hinder, delay or obstruct justice to the Plaintiff's detriment; and**

As demonstrated above, the tort of obstruction of justice requires a particular state of mind, to wit: an actual intent to injure a party by deliberately engaging in acts to obstruct or thwart justice with the intent to deceive or defraud.  Plaintiff's obstruction of justice claim against the City of Hickory, however, is based purely upon **vicarious** liability for the alleged acts of Detectives Rhoney and Sams.  (*See* D.E. #1, Complaint, Third Claim for Relief, ¶¶ 293-301). The Complaint is bereft of any allegations that any final decision-maker or policy-maker for the City acted with the requisite *mens rea* for this tort.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by the Defendant City of Hickory pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be **GRANTED** and the Complaint against it dismissed **WITH PREJUCIDE.**

This the 9th day of February, 2011.

/s/ William L. Hill
William L. Hill (NCSB #21095)


/s/ James D. Secor III
James D. Secor III (NCSB #17594)
*Attorneys for Defendant City of Hickory*

**FRAZIER HILL & FURY, R.L.L.P.**
Post Office Drawer 1559
Greensboro, North Carolina 27402-1559
Telephone:      (336) 378-9411
Facsimile:       (336) 274-7358
whill@frazierlawnc.com
jsecor@frazierlawnc.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a copy of this **BRIEF BY DEFENDANT CITY OF HICKORY IN SUPPORT OF MOTION TO DISMISS** was duly served upon all parties in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure as follows:

_____ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

__X__ Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to said party as follows:

_____ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

____ Telecopying a copy thereof to the attorney for each said party and to each party as follows:

Frank Goldsmith
Goldsmith, Goldsmith & Dews
Post Office Box 1107
Marion, North Carolina  28752
*Attorney for Plaintiff*

Carlos E. Mahoney
Jessica E. Leavin
Glenn, Mills, Fisher & Mahoney, P.A.
Post Office Drawer 3865
Durham, North Carolina  27702-3865
*Attorney for Plaintiff*

Elizabeth A. Martineau
Martineau King P.L.L.C.
227 W. Trade Street, Suite 1490
Post Office Box 31188
Charlotte, North Carolina  28231
*Attorney for Defendants Rhoney and Sams*

This the 9th day of February, 2011.

/s/ William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendant City of Hickory*

26