UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:10-CV-00258

| | |
|---|---|
| GLEN EDWARD CHAPMAN,<br>Plaintiff,<br><br>vs.<br><br>DENNIS ALVIN RHONEY, in his individual capacity,<br>ROBERT A. MULLINAX, as Public Administrator of the ESTATE OF MARK RICHARDSON SAMS, in his individual capacity, and<br>CITY OF HICKORY<br>Defendants. | OBJECTIONS TO MEMORANDUM AND RECOMMENDATIONS<br>Fed. R. Civ. P. 72(b) |

**NOW COMES,** Dennis Alvin Rhoney and Robert A. Mullinax, as Public Administrator of the Estate of Mark Richardson Sams (hereinafter referred to as "Defendant Rhoney," "Defendant Sams," or collectively as the "Individual Defendants"), by and through their undersigned attorneys, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, objecting in part to the Magistrate's Memorandum and Recommendations (hereinafter referred to as "M&R")(Doc. No. 29), which was filed on August 3, 2011. The Individual Defendants make the following specific objections to the M&R.

PROCEDURAL BACKGROUND & INTRODUCTION

The Individual Defendants filed their Motions to Dismiss the § 1983 claims based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the Individual Defendants argued that the Plaintiff failed to state a claim upon which relief can be granted because the claim was barred by Statute of Limitations, the Statute of Repose, and Qualified Immunity. The

1

Motions to Dismiss and accompanying Memorandums of Law are hereby incorporated herein by this reference. United States Magistrate Judge Dennis L. Howell filed his M&R on August 3, 2011, denying the Motions to Dismiss on all counts.

The Individual Defendants also filed Motions to Dismiss the State-based claims, raising the Statute of Limitations and the Plaintiff's failure to state a claim upon which relief may be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Magistrate Judge Howell recommended that this Court dismiss the State claims because they are barred by the Statute of Limitations.

The Individual Defendants respectfully object to the Magistrate's Memorandum and Recommendations with regard to the § 1983 claims, pursuant to 28 U.S.C. § 636(b)(1)(C), and request that this Court **DENY** the Magistrate's Recommendations and **GRANT** the Individual Defendants' Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Individual Defendants have no objections to the Magistrate's Memorandum and Recommendations with regard to the State claims and respectfully request that the Court **ADOPT** his recommendation to dismiss the State claims. In so far as possible, the Individual Defendants will follow the structure and sequence of the Magistrate's M&R, noting their objections.

INDIVIDUAL DEFENDANTS' OJBECTIONS TO THE MAGISTRATE'S
RECOMMENDATIONS

I.  <u>This Court Should DENY in Part the Recommendations for the "Background" Section of the M&R because it Misstates the Factual Allegations Raised in the Complaint.</u>

2

The Magistrate appropriately recited the facts in a light most favorable to the Plaintiff, save one detail. The Magistrate misstated the Plaintiff's factual allegation when he stated that Defendant Rhoney "withheld ***the report of the [the officer's] interview*** from the prosecution because it impeached Gilliam's credibility." Doc. 29, p. 6. In fact, the Complaint alleged that Defendant Rhoney withheld ***SBI Agent Beuker's report of his fire investigation*** from the prosecution, not the officer's report, as the Magistrate cited. Doc. 1, ¶¶138 – 140. These Individual Defendants respectfully request that the Court DENY the Magistrate's recommendations regarding the "Background" in this respect.

II.  The Court should DENY the Magistrate's Recommendations for the Section 1983 Claims Because they are Barred by the Statute of Limitations and the Statute of Repose.

In their Response Memorandum (Doc. 27), the Individual Defendants argued that the Magistrate should Dismiss the § 1983 claims against them because they are barred by the relevant Statute of Limitations and Statute of Repose. The parties agree that the applicable Statute of Limitations is three years. These Individual Defendants argued that the Statute of Limitations should be calculated from the time that the Plaintiff learned of the alleged constitutional violation. Clearly, the Plaintiff was aware of the alleged wrongful acts as late as November, 2003 when he filed a Motion for Appropriate Relief alleging such wrongful conduct. This Court should **DENY** the Magistrate's recommendation, which found that the Statute did not begin to run until "the state criminal proceedings terminated in his favor." Doc. 29, p. 15.

Even if this Court adopts the recommendation concerning the Statute of Limitations, this Court should find that it was erroneous for the Magistrate to in effect deny the Individual Defendants' Motion to Dismiss based on the Statute of Repose. The M&R failed to analyze or

3

address the issue. The applicable Statute of Repose is ten years, and it begins to run upon the occurrence of the alleged wrongful act. N.C.G.S. § 1-52(16) (stating ". . . no cause of action shall accrue more than ten years from the last act or omission of the defendant giving rise to the cause of action").

"Filing within the time limit prescribed by a Statute of Repose is a condition precedent to bringing the action, and plaintiff's failure to file within the prescribed time gives defendant a vested right not to be sued." Boudreau v. Baughman, 356 S.E.2d 907, 911 (N.C. Ct. App. 1987) (citing Colony Hill Condominium I Assoc. v. Colony Co., 320 S.E. 2d 273, 276 (N.C. Ct. App. 1984), disc. rev. denied, 312 N.C. 796, 325 S.E. 2d 485 (1985)); see also McCrater v. Stone & Webster Eng. Co., 248 N.C. 707, 709 (1958). It has been clearly articulated in our Circuit that a Statute of Repose begins to run from the occurrence of an event, that being unrelated to the *accrual* of the of a cause of action, and "the expiration of the time extinguishes not only the legal remedy but also all causes of action, including those which may later accrue as well as those already accrued." See e.g. Dinh v. Rust Int'l Corp., 974 F.2d 500, 502 (4th Cir. Va. 1992)(citing School Bd. v. United States Gypsum Co., 234 Va. 32 (Va. 1987)). The Complaint alleged facts that the Individual Defendants' wrongful conduct occurred between June 1992 through November 1994. The Plaintiff's Complaint was filed on November 3, 2010, nearly fifteen years after the alleged wrongdoings. This honorable court should **DENY** the recommendation of the M&R, and should dismiss the § 1983 Claims based upon the Statute of Repose.

III. This Court Should DENY the Recommendations with regard to the Section 1983 Claims Because the Plaintiff Cannot State a Constitutional Claim to Due Process under these Facts, as that Right was not "Clearly Established" from the Years 1992 through 1994, and that Right would not have been Apparent to a Reasonable Officer in the Individual Defendants' Shoes.

4

The Individual Defendants argued in their Motions to Dismiss that the § 1983 claims could not stand against them in their individual capacities because they enjoy qualified immunity from civil liability that stems from their work as government officials. The appropriate legal analysis is two-part: 1.) whether in a light most favorable to the Plaintiff, has he alleged facts that show the Individual Defendants' conduct violated a constitutional right; and 2.) whether the alleged constitutional right was clearly established at the time of the alleged wrongdoing. Saucier v. Katz, 533 U.S. 194, 200-01 (2001)(articulating the standard of review for claims where a defense of qualified immunity is raised). The order of the two-part test can be alternated, depending on the circumstances of the matter. Pearson v. Callahan, 555 U.S. 223 (2009) (stating that "the judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

While these Individual Defendants argue that the easiest course of analyzing the issue of qualified immunity is to answer the second prong first, the Magistrate chose to answer them in the above-described order. Regardless, the conclusion is the same – in the relevant time period from 1992 until 1994, there was *not* a clearly articulated constitutional right to Due Process when a law enforcement official allegedly withheld exculpatory evidence from the prosecution. In fact, as late as last year, the Fourth Circuit stated "[t]his court's jurisprudence in respect to the cognizability of Brady-type claims against law enforcement officers *remains in a state of uncertainty*." Lynn v. Tarney, 405 Fed. Appx. 753, 762, fn. 4 (4th Cir. 2010)(emphasis added). Without a cognizable constitutional right available to him, the Plaintiff cannot satisfy the first prong – he cannot state facts that support a claim for Due Process on those grounds.

5

The M&R unfortunately misinterprets and misapplies the law by finding that the Plaintiff articulated facts to support a claim for violations of his constitutional right to Due Process; by finding that the Plaintiff's constitutional right to Due Process was "clearly established" at the time the alleged wrongs occurred – 1992 through 1994; and by finding that a reasonable officer would understand that withholding exculpatory evidence would violate the Plaintiff's Due Process rights. Doc. 29, p. 16 – 20. The Magistrate's Recommendations failed to perform the legal analysis for the *specific* constitutional right alleged to have been violated – the Fourteenth Amendment Right to Due Process *when law enforcement allegedly withholds exculpatory evidence from the prosecution*. Instead, the Magistrate relies upon precedent for dissimilar, factual scenarios of alleged constitutional violations. Almost as egregiously, the M&R follows case law that established the constitutional right to Due Process for withheld exculpatory evidence by law enforcement *after* the alleged wrongs in this matter.

A. The Individual Defendants Enjoy Qualified Immunity Because the Plaintiff Cannot State a Constitutional Claim for Due Process Because No Such Constitutional Right Existed when the Alleged Wrongs Occurred.

The Plaintiff alleged that his Fourteenth Amendment right to Due Process was violated by the Individual Defendants' alleged failure to disclose exculpatory evidence to the prosecutor. Doc. 29, p. 16. The Magistrate's legal analysis began by asserting that the reasoning in Brady v. Maryland, 373 U.S. 83, 87 (1963) – that a *prosecutor* who fails to disclose exculpatory evidence to the defendant violates the defendant's Due Process rights – had been broadened to require law enforcement to disclose exculpatory evidence, save liability under § Section 1983 for a Due Process violation. Doc. 29, p. 17. In support of that assertion, the Magistrate cited a string of cases including the following:

> Jean v. Collins, 221 F.3d 656, 659 (4th Cir. 2000)(concurrence)(collecting cases); Carter v. Burch, 34 F.3d 257, 264 (4th Cir. 1994); see also Brady v. Dill, 187 F.3d

6

104, 114 (1st Cir. 1999); Walker v. City of New York, 974 F.2d 292, 298-99 (2nd Cir. 1992); Yarris v. Cnty. Of Del., 465 F.3d 129, 141 (3rd Cir. 2006); Hart v. O'Brien, 127 F.3d 424, 446-47 (5th Cir. 1997); Geter v. Fortenberry, 882 F.2d 167, 171 (5th Cir. 1989); Moldowan v. City of Warren, 578 F.3d 351, 381-82 (6th Cir. 2009); Jones v. City of Chicago, 856 F.2d 985, 995 (7th Cir. 1988); McMillian v. Johnson, 88 F.3d 1554, 1567-68 (11th Cir. 1996).

The court should focus on whether at the time of the relevant events (from 1992 through 1994) it would have been a Due Process violation if law enforcement failed to disclose exculpatory evidence to the prosecution. The Magistrate completely failed to account for the temporal importance of when the constitutional right was first arguably recognized in our circuit, in relation to the alleged harms in this matter.

Even if temporally accurate, the Magistrate's above-cited case law is not controlling or persuasive because each case is factually dissimilar if not utterly incomparable. For instance, in Jean, the 4th Circuit, in a concurrence opinion in the year 2000, concluded that the police officers' withholding of hypnosis information from the prosecution was a Due Process violation, *if the officers acted in bad faith.* 221 F.3d at 663. The Jean opinion clarified that as of the year 2000, the series of cases prior to it had "left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence." Id. at 659. The Magistrate failed to recognize that there was no constitutional right to Due Process when officers withheld exculpatory evidence from the prosecutors arguably until the year 2000 when the Jean court rendered its concurrence opinion.

The Magistrate stated that the Plaintiff provided sufficient factual allegations that the Individual Defendants "intentionally withheld exculpatory evidence from the prosecution so that Plaintiff's counsel could not use this evidence as [sic] trial; . . . withheld this evidence in bad faith; . . . Plaintiff was wrongly convicted of murdering two individuals; and the State Court then overturned his convictions based, in part, on a Brady violation." Doc. 29, p. 18. Again,

7

never does the Magistrate identify that the Fourth Circuit did not recognize the Due Process right until, arguably, in the year 2000, if at all by then, while the underlying facts of this matter occurred from the years 1992 until 1994.

Likewise, the M&R's <u>Carter</u> opinion is not controlling. 34 F.3d 257 (4th Cir. 1994). In <u>Carter</u>, the prisoner who was released under a writ of *habeas corpus* sued the prosecutor and police investigator for failing to disclose exculpatory evidence. <u>Id</u>. at 259. The matter was dismissed under Rule 12(b)(6) against the prosecutor based on his absolute immunity, and a jury awarded the released prisoner $1 in nominal damages against the police investigator. <u>Id</u>. The <u>Carter</u> opinion never discusses which constitutional right is alleged to have been violated, but considering the allegations we assume it was Due Process. The <u>Carter</u> court decided that the jury's award of nominal damages was without error because the facts revealed that the *prosecutor's* failure to disclose the exculpatory evidence, *which he was aware of*, was the proximate cause of the released prisoner's damages; it was *not* the police investigators' duty to disclose such evidence to the defense. The <u>Carter</u> opinion did not discuss the police's duties with regard to disclosing exculpatory evidence, nor did it discuss whether the police's disclosure duties, if any, have any affect on the Plaintiff's constitutional right to Due Process. The circumstances of the case at hand are factually different than those in <u>Carter</u> because, in the case *sub judice*, the Plaintiff alleges that the prosecutor was unaware of the exculpatory evidence and that the Individual Defendants breached their duty to disclose that evidence to the prosecutor. In addition, without a discussion on the Constitutional issue at hand, or the duties required by the police, the <u>Carter</u> opinion is nothing more than an inference.

The remaining cases are unpersuasive because not only do they arise from other circuits, but they are factually dissimilar. <u>See</u> <u>Jean</u>, 155 F.3d at 709 (stating that "if a right is recognized

8

in some other circuit, but not in this one, an official will ordinarily retain the immunity defense"); see also Brady, 187 F.3d at 114 (1st Cir. 1999)(question before the court concerned the *right to be free of seizure and detention* after police learn facts that they arrested the wrong person); Walker, 974 F.2d at 298-99 (2nd Cir. 1992)(question before the court was whether the *defendant City* of New York was liable for its officer's withholding of exculpatory evidence from the defense, when the officers had disclosed the evidence to the prosecution); Yarris, 465 F.3d at 141 (3rd Cir. 2006)(question before the court was whether the plaintiff's *Fifth Amendment* rights were violated when the police did not disclose exculpatory evidence to the defense, but did disclose that evidence to the District Attorney); Hart, 127 F.3d at 446-47 (5th Cir. 1997)(the court determined that a police officer's failure to inform the prosecutor that there was *no probable cause for arrest* was not considered "exculpatory evidence"); Geter, 882 F.2d at 171 (5th Cir. 1989)(court, in review of summary judgment denial, held that the plaintiff had alleged a factual basis to overcome the qualified immunity defense); Moldowan, 578 F.3d at 381-82 (6th Cir. 2009)(court found that the police's withholding of exculpatory evidence from the prosecution violates Due Process rights of individual); Jones, 856 F.2d at 995 (7th Cir. 1988)(question before the court with regard to withholding exculpatory evidence was analyzed against *defendant City and its customs*, not individual officers' duty); McMillian, 88 F.3d at 1567-68 (11th Cir. 1996)(court reaffirmed that the investigators had a duty to disclose evidence to the prosecutor, not the defense).

The controlling law in this circuit dictates that as late as 2010, the law remained unclear regarding constitutional right to Due Process when police failed to disclose exculpatory evidence to the prosecution. Lynn, 405 Fed. Appx. at 762. These Individual Defendants argue that no constitutional right existed in 1992 through 1994. Therefore, the M&R is erroneous in

9

its conclusion that the Plaintiff validly stated a claim to a Due Process violation based on these facts.

B.  The Individual Defendants Enjoy Qualified Immunity Because From 1992 through 1994, there was no Clearly Established Constitutional Right to Due Process when Law Enforcement Allegedly Withheld Exculpatory Evidence from the Prosecutor, of which a Reasonable Officer would have been aware.

The second prong of the qualified immunity test is whether the constitutional right raised was "clearly established" such that a reasonable law enforcement official would have been aware that his conduct would violate that constitutional right. The Magistrate again incorrectly interprets and applies the law to the facts of this matter. Doc. 29, p. 18 – 20. The M&R acknowledged that a constitutional right is "clearly established" if a "reasonable official would understand that what he is doing violates that right." Doc. 29, p. 18; Anderson v. Creighton, 483 U.S. 635, 640 (1987). The requirement that a right be "clearly established" ensures that officials have ample notice of the legal standards that govern their conduct. See Davis v. Scherer, 468 U.S. 183, 195 (1984). As the Fourth Circuit has articulated,

> officers cannot be ambushed by newly invented theories of liability or by unforeseen applications of old ones. Thus, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991) (quoting Anderson , 483 U.S. at 640); see also Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) ("For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what [the] defendant is doing violates federal law in the circumstances").

To overcome "ambushing officers," the wrongfulness associated with the clearly established right must be "apparent"  Anderson, 483 U.S. at 640. Apparentness, as the M&R

states, can be determined by "consider[ing] whether a reasonable person[1] in the official's position would have known that his conduct would violate that right." Doc. 29, p. 19.

The Magistrate appropriately described the precedential confines as the decisions of the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the North Carolina Supreme Court. Doc. 29, p. 19. No United States or North Carolina Supreme Court opinion is on point. The Magistrate ignored, however, the blatant assertion in the Jean opinion that the law in the Fourth Circuit, as late as the year 2000, was "unclear" with regard to a law enforcement officer's exculpatory disclosure duties. Jean, 221 F.3d at 650. The M&R also made no reference to the very recent Fourth Circuit case that continued to describe the precedent on law enforcement's disclosure duties as "remaining in a state of uncertainty," even in light of the Jean concurrence opinion. Lynn, 405 Fed. Appx. at 762, fn. 4.

In light of the Fourth Circuit's two blunt assertions of uncertainty in the law, the Magistrate still concluded that the law was apparent to reasonable officers. To support his conclusion, the Magistrate cited to the opinion in Goodwin v. Mets, 885 F.2d 157, 163 (4th Cir. 1989), for the premise that in 1989, the Fourth Circuit recognized that an investigating officer could be held liable under § 1983 for the failure to disclose exculpatory evidence[2]. Doc. 29, p. 19. However, the Fourth Circuit in its opinion in Walker v. Sopher *directly* refuted the same

---

2. Although, the M&R states "reasonable person" it later applies a "reasonable officer" test to the facts. These Defendants would agree that the "reasonable officer" is the appropriate standard.

2. In Goodwin, the plaintiffs were accused of a break-in, but after their arrest, the investigating officer discovered that a key informant had provided him with a false name and address and could no longer be found. Before the plaintiffs' trial, the officer learned of another's confession to the crime. The public prosecutor declined to try the very weak case. Instead, a private lawyer who had represented the victims of the break-in did so. Prior to trial, this lawyer conferred with the investigating officer, who did not mention that another man had confessed to the crime. After a jury trial, the plaintiffs were acquitted. They later brought a successful § 1983 action against the officer.

11

assertion that Goodwin clearly established the Due Process rights for an individual against whom the police withhold exculpatory evidence. Walker v. Sopher, 1998 LEXIS 23712, at 11-13 (4th Cir. Sept. 23, 1998). In Walker, the Fourth Circuit analyzed Goodwin stating:

> [In Goodwin,] on the officer's appeal, we stated that "[a] police officer who withholds exculpatory information from the prosecutor can be liable under both § 1983 and the state common law." Goodwin, 885 F.2d at 162. "Being subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation." Id. at 163.
>
> The question for us, then, is whether these pronouncements rendered "the 'contours of the right' . . . so conclusively drawn as to leave no doubt that the challenged action[s were] unconstitutional." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991) (quoting Anderson, 483 U.S. at 640), cert. denied, 502 U.S. 1031 (1992). ***We think that they did not***. . .
>
> [T]he precise legal basis for the holding in Goodwin is not entirely clear. We described the section 1983 claim at issue in Goodwin alternately as "wrongful prosecution" or "malicious prosecution resulting in a constitutional deprivation." Goodwin, 885 F.2d at 160 & n.1. Moreover, though our analysis seemed to rest on due process, we did not precisely articulate that reliance.

Walker is still good law; it was erroneous for the Magistrate to have failed to follow that precedent.

The M&R next cited to Carter for the premise that "an officer's failure to turn over exculpatory evidence to the prosecution violated the criminal defendant's constitutional rights." Carter, 34 F.3d at 264. We distinguished Carter in Section III A above. The prosecutor was aware of the exculpatory evidence; it is abundantly clear from the holdings in Brady and its progeny that the duty to disclose exculpatory evidence to the defendant lies with the *prosecutor*, not the officers, which is why the Carter opinion found that the police officer was not the proximate cause of the plaintiff's injuries. These Individual Defendants argue that the distinguishable facts in Carter and absence of a discussion regarding the exact disclosure duties an officer has regarding exculpatory evidence renders this opinion unpersuasive to the matter at

12

hand. First, in the underlying matter, the facts alleged were that the officers *did not* disclose the evidence to the prosecutor. Secondly, subsequent to the 1994 Carter opinion, case law in our circuit, i.e., Jean and Lynn, explicitly stated the law in our circuit is unclear on the issue. Lynn, 405 Fed. Appx. At 762, fn. 4; Jean 221 F.3d at 659. Also of note, and as argued in greater detail in the Defendant's Response Memorandum (Doc. 27), the Carter opinion could not have apprised the Individual Defendants that they had constitutional duties to disclose exculpatory evidence because it was ***not published*** until January 4, 1995, some years after the underlying 1992 murders and investigations and months after the conclusion of the Plaintiff's criminal trial. See Doc. 27, p. 4.

Finally, the Magistrate's citation to the Sixth Circuit's holding in Moldowan, 578 F.3d at 381-82, is an erroneous and contradictory attempt to reach into other circuits' case law as support for his argument. Doc. 29, p. 20. Not only was the Moldowan opinion rendered in 2009, seventeen years after the alleged wrongdoing, but the "collection of cases" that it cites to fail to include any from the Fourth Circuit. In light of the Magistrate's own assertion that he should follow the decisions from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the North Carolina Supreme Court, this Court should find the M&R's reliance on Moldowan of no consequence to the Individual Defendants. See Doc. 29, p. 19.

Because every single case cited to by the Magistrate can be factually distinguished, or has been explicitly distinguished by the Fourth Circuit Court of Appeals, and in light of the Jean and Lynn opinions finding that the on-point law in our circuit is unclear and uncertain, these Individual Defendants object to this portion of the Magistrate's recommendation; urge this Court to DENY the Magistrate's recommendation, and Dismiss Plaintiff's § 1983 claims against these Individual Defendants.

13

CONCLUSION

In light of the above-stated objections to the M&R, this Court should DENY the Magistrate's recommendations for the § 1983 claims and dismiss them against these Individual Defendants. This honorable court should ADOPT the recommendations with regard to the State claims.

Respectfully submitted this 6th day of September.

/s/ Elizabeth A. Martineau
NC Bar No. 26394
Martineau King, PLLC
Post Office Box 31188
Charlotte, North Carolina 28231
Telephone: 704-247-8524
Facsimile: 704-943-0543
emartineau@martineauking.com
*Attorney for Defendant Rhoney and Sams*

/s/ Lauren L.H. Glazier
NC Bar No.: 40705
Martineau King, PLLC
Post Office Box 31188
Charlotte, North Carolina 28231
Telephone: 901-606-2728
Facsimile: 704-943-0543
lglazier@martineauking.com
*Attorney for Defendant Rhoney and Sams*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION** using the CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system, including:

Frank Goldsmtih
Goldsmith, Goldsmith & Dews
PO Box 1107
Marion, NC 28752
frank@goldsmithdews.com
*Counsel for Plaintiff.*

Carlos E. Mahoney
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
cmahoney@gmf-law.com
*Counsel for Plaintiff.*

Jessica E. Leaven
Glenn, Mills, Fisher & Mahoney, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
jleaven@gmf-law.com
*Counsel for Plaintiff*

William Hill
Frazier, Hill and Fury
500 West Friendly Avenue, Suite 100
Greensboro, NC 27401
*whill@frazierlawnc.com*
*Counsel for City of Hickory.*
.

This 6th day of September

/s/Elizabeth A. Martineau
Elizabeth A. Martineau