UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10-CV-00258-MR-DLH

| | |
|---|---|
| GLEN EDWARD CHAPMAN, | ) |
| Plaintiff, | ) |
| v. | ) **OBJECTIONS BY DEFENDANT CITY OF HICKORY TO MAGISTRATE'S MEMORANDUM AND RECOMMENDATION (D.E. # 29)** |
| DENNIS ALVIN RHONEY, in his individual capacity, ROBERT A. MULLINAX, as Public Administrator of the ESTATE OF MARK RICHARDSON SAMS, in his individual capacity, and CITY OF HICKORY, | ) |
| Defendants. | ) |

## PREAMBLE

**COMES NOW** the Defendant City of Hickory, through Counsel, pursuant to Fed.R.Civ.P. 72(b) and Local Rule 72.1(C), and respectfully submits the following Objections to Magistrate Judge Howell's Memorandum and Recommendation (hereinafter "M&R") (D.E. #29) as it pertains to this Defendant's Motion to Dismiss (D.E. #19).

## STATEMENT OF THE CASE

Plaintiff's Complaint was filed on **November 3, 2010** pursuant to the Civil Rights Act of 1871, Title 42 U.S.C. § 1983, seeking relief under the Fourteenth

Amendment to the United States Constitution and, in tort, under North Carolina common law. (Complaint, D.E. #1, ¶¶ 12-14). The Complaint contains three (3) separate claims for relief structured as follows:

**First Claim for Relief**: under § 1983 against Defendants Rhoney and Sams for the alleged intentional failure to disclose material exculpatory evidence (D.E. #1 at ¶¶ 261-280);

**Second Claim for Relief**: under § 1983 against Defendant City of Hickory for allegedly permitting and condoning the withholding of exculpatory evidence by Defendants Rhoney and Sams (D.E. #1 at ¶¶ 281-292); and

**Third Claim for Relief**: under North Carolina common law against all three (3) Defendants for alleged obstruction of justice (D.E. #1 at ¶¶ 293-301).[1]

Plaintiff's claims all arise from alleged misconduct by Defendants Rhoney and Sams in intentionally withholding material exculpatory evidence resulting in Plaintiff's convictions for two **1992** murders as a result of which death sentences were imposed upon Plaintiff. (D.E. #1 at ¶¶ 1-6).

Defendants Rhoney and Sams and Defendant City of Hickory, through their respective Counsel, filed separate Motions to Dismiss the Complaint in its entirety. (D.E. ## 17 and 19). On **August 3, 2011**, Magistrate Howell filed his M&R recommending that the District Court <u>deny</u> both Motions with respect to the

---

[1] This common law tort claim is lodged against the City of Hickory based purely upon the doctrine of *respondeat superior* for alleged acts committed by Defendants Rhoney and Sams. (D.E. #1 at ¶ 301).

Federal § 1983 claims contained in the First and Second Claims for Relief. (D.E. #29 at pp. 15-16, 20 and 23-24). The Magistrate further recommended, however, that the Court <u>grant</u> both Motions and dismiss Plaintiff's State law claim for obstruction of justice in the Third Claim for Relief. (D.E. #29 at 25-27).[2]

## OBJECTIONS

I. **Background:**

The Defendant City of Hickory takes no issue with this portion of the Magistrate's M&R. (D.E. #29 at pp. 2-12). Nonetheless, the City believes it would be helpful to the District Court to focus briefly on the allegations in the Complaint as they pertain to the City of Hickory. As to this Defendant, Plaintiff openly acknowledges that before his conviction on **November 10, 1994**, the City's Police Department had **"an official policy…requiring Police Officers, upon the initiation of criminal charges, to prepare and submit a prosecution summary to the District Attorney's Office along with copies of all typed reports concerning the case, including Incident Reports, Supplemental Reports, Arrest Reports, Lab Reports, and Medical Examiner and Autopsy Reports."** (Complaint, D.E. #1, ¶ 282). Plaintiff further acknowledges that the aforementioned materials, once produced by Hickory Police Officers, would be

---

[2] Magistrate Howell recommended dismissal of the State law obstruction of justice claim based upon the expiration of the three (3) year Statute of Limitations. The Magistrate also discussed, however, the substance of the City's sovereign immunity defense in the event that Judge Reidinger were to disagree with the Magistrate's determination of the accrual date for statute of limitations purposes. (M&R at pp. 27-29).

3

available to criminal Defendants and their Counsel under the D.A.'s "open file" policy. (*Id.* at ¶ 284).

Plaintiff's singular allegation against the City is that under its alleged official policy, Police Officers were permitted to **"withhold handwritten notes, telephone memos and pending lab work from the Prosecution"** and that Officers **"were permitted to destroy their handwritten notes after the preparation of a typewritten report"**. (*Id.* at ¶ 285). Plaintiff contends that as a result of this Policy, **"handwritten notes, telephone memos and pending lab work compiled by the City of Hickory Police Officers in investigations would not be available for inspections by criminal Defendants and their Counsel even when the materials contained exculpatory evidence."** (*Id.* at ¶ 286). At the crux of the Plaintiff's claims against the City is the following allegation:

> **The custom of withholding exculpatory evidence by Police Officers at Defendant City of Hickory was, <u>upon information and belief</u>, so persistent and widespread that it was the Police Department's standard operating procedure on and before <u>November 10, 1994</u>.**

(Complaint, D.E. #1 at ¶ 288--underscoring added for emphasis). Plaintiff further alleges that the City **"condoned the custom at the Police Department of withholding exculpatory evidence from the Prosecution and that Defendants Rhoney and Sams acted in accordance with this custom when they [allegedly] intentionally withheld material exculpatory evidence from the Prosecution in the Ramseur and Conley cases."** (*Id.* at ¶¶ 289-90).

4

## II. Legal Standard:

The City of Hickory agrees that the Magistrate has identified the correct Rule 12(b)(6) legal standard in his M&R. (D.E. #29 at pp. 12-14).

## III. Analysis:

**A. 1. and 3. The Section 1983 Claim against the City of Hickory:**

The City respectfully objects to these portions of the Magistrate's M&R (D.E. #29 at pp. 20-24) for the following reasons:

**(a) The Applicable Statutes of Limitation and Repose**

In his M&R, the Magistrate correctly states that when determining the statute of limitations for Plaintiff's §1983 claims, we look to the analogous State tort. (*See* M&R at p. 15). Defendant Hickory disagrees, however, with the Magistrate's determination that malicious prosecution is the analogous State tort in the instant action.[3] Instead, the Defendant Hickory argues that the Plaintiff, himself, has identified what he considers the most analogous State claim, to wit: the tort of "obstruction of justice" contained in his Third Claim for Relief.

As stated in this Defendant's principal Brief (D.E. # 20 at p. 11) (and as reflected in the Magistrate's M&R at pp. 24-25), North Carolina law requires that an obstruction of justice claim be brought within three years from the date the

---

[3] The determination of the corresponding State tort claim is of paramount importance because it will affect the determination of the accrual date for statute of limitations purposes. If malicious prosecution is the proper analogous tort, as the Magistrate has concluded, then the three year statute of limitations would not begin to accrue until **November 6, 2007** when State Superior Judge Ervin entered his Order terminating the criminal proceedings in Plaintiff's favor. (*See* M&R at pp. 15-16).

5

cause of action accrues; and such an action "accrues when a Plaintiff becomes aware or reasonably should have become aware of the fraud or harm." *Self v. Yelton*, --N.C.App.--, 688 S.E.2d 34, 38-39 (2010) (citing N.C.G.S. §1-52(9) and (16)(2009)). As discussed in more detail in its principal Brief at p. 11, the City contends that **November 10, 2003** is when the Plaintiff became aware of the alleged harm as this is the date that he first raised the issue of the alleged intentional withholding of exculpatory evidence in his Second Amended MAR. Since the instant Complaint was not filed until nearly seven years later on **November 3, 2010**, it should be time barred.

Should the District Court agree with the Magistrate's assessment of the accrual date on the § 1983 claim (i.e., that it began to accrue when the State criminal proceedings were resolved in Plaintiff's favor on **November 6, 2007**), the Defendant Hickory objects to the Magistrate's conclusion that this claim would not be barred by the Statute of Repose. As the City pointed out in its principal Brief (D.E. # 20 at p. 12), N.C.G.S. § 1-52(16) provides a ten year Statute of Repose "from the last act or omission of the Defendant giving rise to the cause of action." As this Defendant argued in its earlier Brief (D.E. # 20 at p. 12), the last act or omission committed by Detectives Rhoney and Sams would have been at the time of the Plaintiff's murder trial in **November of 1994** yet this instant civil action was not initiated until some sixteen years later in **November of 2010**. Although all of

the Defendants raised the issue of the Statute of Repose in their Motions to Dismiss, the Magistrate's M&R does not contain any detailed discussion as to why the Statute of Repose is inapplicable here. As such, the City of Hickory respectfully disagrees with the Magistrate on this particular point and urges the District Court to depart from the M&R as it pertains to the Statute of Repose and dismiss the § 1983 on that basis.

> **(b) Plaintiff's claims against the City of Hickory should fail because the allegations in the Complaint are conclusory in nature and do nothing more than allege a single act or isolated instances of misconduct on the part of others which, in and of themselves, are insufficient to predicate § 1983 liability against the City:**

The City of Hickory agrees with the Magistrate (M&R at pp. 20-21) that municipal liability can be triggered by an unlawful policy formally adopted by an official with decision-making authority **or** implemented through "custom" even though the policy had not received formal approval. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978). With respect to the latter, the *Monell* Court held that it must "be so permanent and well-settled as to constitute a custom or usage with the force of law". *Id*.

The City of Hickory respectfully disagrees and objects, however, with the Magistrate's conclusion that: "The allegations in the Complaint are sufficient to infer knowledge on the part of the City [as to the alleged wide-spread practice of

7

its Officers withholding exculpatory evidence], as well as that the City policy makers acted with deliberate indifference or the specific intent not to correct or stop its Officers from withholding exculpatory evidence from the prosecution." (M&R at pp. 23-24).

To begin, it is important to again note that Plaintiff openly acknowledges that the Hickory Police Department's established policy required its Police Officers, **"upon the initiation of criminal charges, to prepare and submit a prosecution summary to the District Attorney's Office along with copies of all typed reports concerning the case, including Incident Reports, Supplemental Reports, Arrest Reports, Lab Reports, and Medical Examiner and Autopsy Reports."** (Complaint, D.E. #1, ¶ 282). Plaintiff further agrees that the aforementioned materials, once produced by Hickory Police Officers, were made available to criminal Defendants and their Counsel under the District Attorney's "open file" policy. (*Id.* at ¶ 284). There is nothing legally deficient with that portion of the Department's policy. In fact, it seems quite consistent with the requirements imposed by the Supreme Court in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963) and Plaintiff does not allege otherwise.

Plaintiff's lengthy Complaint contains nothing more than conclusory allegations that an unlawful Departmental policy or custom persisted **prior to** Plaintiff's conviction. In particular, he claims that as a result of the Police

Department's official policy or custom, its Officers withheld exculpatory evidence from the D.A.'s Office to prevent it from being produced to criminal Defendants in violation of the Fourteenth Amendment's Due Process Clause. (Complaint, ¶ 287).

At the heart of Plaintiff's claims against the City is this **singular** allegation:

> **The custom of withholding exculpatory evidence by Police Officers at Defendant City of Hickory was, <u>upon information and belief</u>, so persistent and widespread that it was the Police Department's standard operating procedure on and before <u>November 10, 1994</u>.**

(Complaint at ¶ 288) (underscoring added for emphasis). It is noteworthy, that Plaintiff makes this critical allegation **"upon information and belief"**. According to the Complaint, Plaintiff submitted an original MAR which was then twice amended; State Superior Court Judge Ervin presided over **six (6)** separate post-conviction hearings over a **2.5 year** period; testimony was presented from **49** witness for the Plaintiff and **3** for the State; and Counsel for the Plaintiff and Government tendered **189** exhibits to the Superior Court for consideration. (Complaint, D.E. #1 at ¶¶ 253-54). Despite all the time devoted and all the evidence reviewed and analyzed through those exacting proceedings, Plaintiff is unable to point to a single other instance in his Complaint where another criminal Defendant was unlawfully convicted due to exculpatory evidence allegedly withheld by Hickory Police Officers. Instead, the only allegation is that **"upon information and belief"** a widespread custom and pattern of such misconduct

9

took place. In fact, the only instance Plaintiff can point to where such a situation allegedly manifested itself was in his own criminal proceedings.

As recognized by the Fourth Circuit, "A single act or isolated instances are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). *Accord*, *Spell v. McDaniel*, 824 F.2d 1380, 1381 (4th Cir. 1987), *cert. denied* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (holding that "proof of a single violation will not support the inference that the violation resulted from a municipal 'policy'…"). Because Plaintiff has not alleged more than a single act or isolated violation, he has failed to state a claim against the City under § 1983.

The Complaint is also bereft of any allegations that the City specifically knew or should have known that this allegedly widespread practice was taking place. As such, it is difficult to understand upon what factual basis Plaintiff asserts that this purportedly unconstitutional custom and practice was "condoned" by the City. (*See* Complaint at ¶ 289).

The City contends that Plaintiff's allegations against it on this issue lack a factual basis and are conclusory in nature. As such, they are insufficient to establish municipal liability under § 1983. *See Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009);

It is also noteworthy that although Plaintiff cites Judge Ervin's Order in several places in his Complaint, he never specifically alleges the Judge found that this widespread practice of withholding exculpatory evidence manifested itself in cases other than the Plaintiff's. Nor does Plaintiff allege that Judge Ervin found, as fact, that such instances (**if** they occurred at all) were a proximate result of the Police Department's alleged policy. (See, e.g., Complaint at ¶¶ 255-57).

The City of Hickory is not suggesting that the well-established framework for analyzing a Rule 12(b)(6) Motion should be disregarded in this case simply because of the State MAR proceedings and the existence of Judge Ervin's State Court Order. Instead, it is arguing that the Plaintiff has made those proceedings and the factual and legal findings in Judge Ervin's Order **the very bedrock of his Complaint**. As such, it is abundantly fair to evaluate the Complaint at the 12(b)(6) stage not only on what the MAR proceedings and Judge Ervin's Order allegedly revealed, but also upon what they failed to show. In this instance, they failed to show any evidence that the City of Hickory permitted or condoned the existence of an unconstitutional policy or practice.

- (c) **Plaintiff has failed to sufficiently allege that he has suffered a Constitutional deprivation as a direct and proximate result of any custom, policy or practice instituted by the City of Hickory. On the contrary, the allegations in Plaintiff's Complaint allege that he was harmed when Detectives Rhoney and Sams allegedly acted outside the scope of their official duties and in violation of the City's established policies and procedures**

The City disagrees with and objects to the Magistrate's conclusion (M&R at pp. 23-24) that Plaintiff's allegations sufficiently allege that the Police Department's purported policy was the **proximate cause** of his Constitutional injury as is Plaintiff's burden when pleading a § 1983 claim. *See* <u>Shaw v. Stroud</u>, 13 F.3d 791, 798-99 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994) (holding that § 1983 litigant must allege and prove the existence of an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff).

In fact, in his Complaint, Plaintiff specifically alleges that Detectives Rhoney and Sams withheld exculpatory evidence in direct violation of established City policy. For example, in Paragraphs 294 – 296 of the Complaint, Plaintiff openly asserts that Detective Rhoney destroyed line-up photographs; destroyed a required supplemental report or willfully failed to prepare a required report; and that Detective Sams intentionally prepared false reports. (D.E. #1 at ¶¶ 294 –96). Such misconduct, in the event it ever occurred, **would not** have been permissible under the policy promulgated by the Police Department. (*See* Complaint at ¶¶ 284-85).

Along those lines, it is also legally significant that Plaintiff has elected to sue Detectives Rhoney and Sams solely and exclusively in their **individual** capacities as the Federal Courts have recognized that "[g]enerally, individual capacity suits

involve actions taken by Governmental agents <u>outside the scope of their official duties</u>." *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (underscoring added for emphasis). This provides further support for the argument that to the extent Plaintiff has a § 1983 claim at all, it arises not from any policy instituted by the City's Police Department but by wholly independent actions and decisions by others which were outside the scope of their employment duties for the City.[4]

With every respect to Magistrate Howell, the Defendant Hickory submits that the M&R does not sufficiently address either this proximate cause argument or the legal effect of Plaintiff's choice to sue Detectives Rhoney and Sams in their individual capacities.

**B.     The State Law Claims:**

In his M&R, Magistrate Howell recommended dismissal of Plaintiff's Third Claim for Relief under State law for obstruction of justice. (M&R at pp. 26-27). His recommendation for dismissal was based upon the applicable Statute of Limitations. (*Id.*). The Defendant Hickory agrees with the Magistrate's Recommendation but requests to respond to the Magistrate's subsequent discussion concerning the City's sovereign immunity defense. (M&R at pp. 27-29).[5]

---

[4] For clarification, the City of Hickory **is not** acknowledging nor conceding that the Plaintiff has asserted a valid claim against Detectives Rhoney or Sams. Instead, and for purposes of this Motion, the City is only taking the specific allegations made by the Plaintiff in his Complaint (as it is required to do at the Rule 12(b)(6) stage) and demonstrating why Plaintiff has failed to state a claim for municipal liability.

[5] The Magistrate included this discussion in his M&R in the event that the District Court disagreed with his conclusion that the Statute of Limitations barred Plaintiff from bringing this State law claim.

It is well-settled that the doctrine of sovereign immunity bars official capacity claims against municipalities and their officials, including Police Officers, performing governmental functions. <u>Williams v. Holsclaw</u>, 128 N.C.App. 205, 208, 495 S.E.2d 166, 168, *aff'd*, 349 N.C. 225, 504 S.E.2d 784 (1998).

As discussed in the Defendant Hickory's principal Brief, the protection afforded by the doctrine of sovereign immunity can be waived through the purchase of liability insurance. <u>Satorre v. New Hanover County Bd. of Com'rs.</u> 165 N.C.App. 173, 176, 598 S.E.2d 142, 144 (2004), *rev. denied,* 359 N.C. 282, 608 S.E.2d 770 (2005) However, in that event**, "immunity is waived <u>only to the extent</u> that the [municipality] is indemnified by the insurance contract from liability from the acts alleged."** <u>Id</u>. (quoting <u>Combs v. Town of Belhaven</u>, 106 N.C.App. 71, 73, 415 S.E.2d 91, 92 (1992)) (underscoring added for emphasis).

The City of Hickory did, in fact, purchase liability insurance policies to provide coverage for the law enforcement activities of its Police Department during the **1990's**. Attached to its principal Brief (D.E. #20) as Exhibits 2 - 7, were complete copies of the policies issued to the City for the following periods:

| **Exhibit No.** | **Insurer** | **Policy No.** | **Policy Period** |
| --- | --- | --- | --- |
| Ex. No. 2: | National Casualty Co. | PLO 0201066 | 9.2.91 - 9.2.92 |
| Ex. No. 3: | National Casualty Co. | PLO 0301072 | 9.2.92 - 9.2.93 |
| Ex. No. 4: | General Star Nat' Ins. Co. | NYA 805237 | 9.2.93 - 9.2.94 |
| Ex. No. 5: | National Casualty Co. | PLO 0440704 | 9.2.94 - 9.2.95 |
| Ex. No. 6: | National Casualty Co. | PLO 0503393 | 9.2.95 - 9.2.96 |

Ex. No. 7:         National Casualty Co.         PLO 0540714         9.2.96 - 9.2.97[6]

As the City argued, however, in its Brief in support of its Motion to Dismiss, although it purchased policies of liability insurance for the period from **September 2, 1991** through **September 2, 1997**, it did not waive the defense of sovereign immunity as to Plaintiff's obstruction of justice claim because the provisions in those insurance contracts may not indemnify the Defendants for such a claim. (For a more detailed discussion see D.E. #20 at pp. 18-24).

This brings us back to the Magistrate's M&R. In his recommendation, Magistrate Howell states that consideration of the aforementioned insurance policies would be improper as "this Court may not consider extrinsic evidence at the motion to dismiss stage unless the document submitted with a defendant's motion to dismiss is integral to and specifically relied upon in the Complaint and plaintiff does not challenge the authenticity of the document." (M&R at pp. 28-29 (citing Phillips v. LCI Int'l. Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

The City respectfully disagrees and objects to the Magistrate's conclusion because the Plaintiff, by **specifically** pleading in his Complaint the waiver of sovereign immunity through the purchase of liability insurance, has made those insurance contracts **integral** to his Third Claim for Relief. This Defendant also

---

[6] The National Casualty insurance policies attached hereto as Ex. Nos. 2, 3, 5, 6 and 7 have all been certified or otherwise authenticated by the insurer as evidenced by the Exhibits themselves. The lone insurance policy provided by General Star and attached as Ex. No. 4 was provided to Counsel for the City of Hickory on **February 8, 2011** by the Attorneys for General Star. At the time of this writing, a certified copy had not yet been made available. A certified copy will, however, be provided to Plaintiff's Counsel and the Court immediately upon its receipt.

submits that any concern regarding the authenticity of those documents was sufficiently addressed by the certifications and other indicia of authenticity provided by the insurers in the attached policies of insurance.

In addition, and as argued earlier, the fact that Plaintiff has sued the two Detectives exclusively in their individual capacities, is legally tantamount under § 1983 case law to an allegation that the Detectives acted outside the course and scope of their official duties. *Nix v. Norman*, *supra*, 879 F.2d at 431. Plaintiff's Third Claim for Relief for obstruction of justice as it pertains to the City of Hickory is grounded solely upon the doctrine of *respondeat superior*. The City submits that when an employee is alleged to have acted outside the scope of his or her employment (as is the case here according to Plaintiff's Complaint), the doctrine will not sustain a vicarious liability claim against the employer. *See Parker v. Erixon*, 123 N.C.App 383, 391, 473 S.E.2d 421, 427 (1996). As such, the very nature of the allegations in Plaintiff's Third Claim for Relief requires that this claim be dismissed as to this municipal Defendant.

Last, as discussed in the City's original Brief (D.E. #20 at pp. 19-20), the tort of obstruction of justice requires a particular state of mind, to wit: an actual intent to injure a party by deliberately engaging in acts to obstruct or thwart justice with the intent to deceive or defraud. Plaintiff's obstruction of justice claim against the City of Hickory, however, is based purely upon **vicarious** liability for

the alleged acts of Detectives Rhoney and Sams. (*See* Complaint, ¶¶ 293-301). The Complaint is bereft of any allegations that any final decision-maker or policy-maker for the City acted with the requisite *mens rea* for this tort.

In sum, should the District Court disagree with the Magistrate's recommendation to dismiss Plaintiff's State law obstruction of justice claim based upon the applicable Statute of Limitations, then, and in that event, the doctrine of sovereign immunity and other legal bases relied upon by the City above, would provided an alternative justification for the dismissal of that claim.

## **CONCLUSION**

Based upon the foregoing objections as well as the reasons contained in its principal Brief, the Defendant City of Hickory respectfully urges the District Court not to adopt the Magistrate's M&R as it pertains to Plaintiff's § 1983 claims as contained in the First and Second Claims for Relief and, instead, to grant said Defendant's Motion to Dismiss the Complaint (D.E. #19) in its entirety.

This the 6th day of September, 2011.

/s/ William L. Hill
William L. Hill (NCSB #21095)

/s/ J. D. Secor III
James D. Secor III (NCSB #17594)
*Attorneys for Defendant City of Hickory*

**OF COUNSEL:**

**FRAZIER HILL & FURY, R.L.L.P.**
Post Office Drawer 1559
Greensboro, North Carolina 27402-1559
Telephone: (336) 378-9411
Facsimile: (336) 274-7358
whill@frazierlawnc.com
jsecor@frazierlawnc.com

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **OBJECTIONS BY DEFENDANT CITY OF HICKORY TO MAGISTRATE'S MEMORANDUM AND RECOMMENDATION (D.E. # 29)** was duly served upon all parties in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure as follows:

\_\_\_\_  Hand delivering a copy hereof to the attorney for each said party addressed as follows:

  X   Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to said party as follows:

\_\_\_\_  Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

| | |
|---|---|
| Frank Goldsmith<br>Goldsmith, Goldsmith & Dews<br>Post Office Box 1107<br>Marion, North Carolina  28752<br>*Attorney for Plaintiff* | Carlos E. Mahoney<br>Jessica E. Leavin<br>Glenn, Mills, Fisher & Mahoney, P.A.<br>Post Office Drawer 3865<br>Durham, North Carolina  27702-3865<br>*Attorneys for Plaintiff* |
| Elizabeth A. Martineau<br>Martineau King P.L.L.C.<br>227 W. Trade Street, Suite 1490<br>Post Office Box 31188<br>Charlotte, North Carolina  28231<br>*Attorney for Defendants Rhoney and Sams* | |

This the 6th day of September, 2011.

/s/ William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendant City of Hickory*