# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10cv258

| | |
|---|---|
| GLEN EDWARD CHAPMAN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DENNIS ALVIN RHONEY, in his )<br>individual capacity, ROBERT A. )<br>MULLINAX, as Public Administrator )<br>of the ESTATE OF MARK )<br>RICHARDSON SAMS, in his )<br>individual capacity, and CITY OF )<br>HICKORY, )<br>)<br>Defendants. )<br>) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motions to Dismiss [Docs. 17 and 19]; the Magistrate Judge's Memorandum and Recommendation [Doc. 29] regarding the disposition of those motions; and the parties' Objections to the Memorandum and Recommendation [Docs. 31, 32, 33].

## I. PROCEDURAL BACKGROUND

The Plaintiff brings this action against the City of Hickory (the "City") and two of its former police officers in their individual capacities ("Rhoney" and "Sams"). In the First Claim for Relief, the Plaintiff asserts claims pursuant to

42 U.S.C. § 1983 against Officers Rhoney and Sams in their individual capacity based on their alleged violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, the Plaintiff contends that by intentionally withholding exculpatory evidence in bad faith, Officers Rhoney and Sams deprived the Plaintiff of his liberty without due process of law. In the Second Claim for Relief, the Plaintiff alleges that the City is liable pursuant to § 1983 because it condoned a custom of allowing its police officers to withhold exculpatory evidence from the prosecution in violation of the Fourteenth Amendment. In the Third Claim for Relief, the Plaintiff asserts claims under North Carolina law against all of the Defendants for obstruction of justice.

The Defendants moved to dismiss the Complaint in its entirety on a variety of grounds. [Docs. 17, 19]. Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the Defendants' motions and to submit to this Court a recommendation for their disposition. On August 3, 2011, the Magistrate Judge filed a Memorandum and Recommendation, recommending that the Defendants' motion be denied with respect to Plaintiff's § 1983 claims and granted with respect to his obstruction of justice claim. [Doc. 29]. With respect to the § 1983 claims, the Magistrate

Judge concluded that: (1) such claims are not time-barred, as he brought this action within three years of the termination of the criminal proceedings in his favor; (2) Defendants Rhoney and Sams are not entitled to qualified immunity, because the Complaint sets forth factual allegations stating a claim for the deprivation of Plaintiff's due process rights and such right was clearly established at the time the alleged wrongs occurred; and (3) the Complaint states a valid claim for relief against the City based on a theory of condoning a custom of allowing police officers to withhold exculpatory evidence from the prosecution. With respect to the Plaintiff's state law claims for obstruction of justice, the Magistrate Judge concluded that such claims are barred by the applicable statute of limitations. The Defendants now object to the Magistrate Judge's recommendation regarding the § 1983 claims. [Docs. 31, 32]. The Plaintiff objects to the recommendation that his state law claims be dismissed. [Docs. 33].

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to Objections to Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In

order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Rule 12(b)(6) Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Rather, a plaintiff must "articulate facts, when accepted as true,

4

that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

As the Fourth Circuit has explained:

> The Supreme Court has held that a complaint must contain more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. To discount such unadorned conclusory allegations, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth. This approach recognizes that naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief.

Id. (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 556 U.S. at 679, 129 S.Ct. 1937) (internal quotation marks omitted).

## III. FACTUAL BACKGROUND

In the Background section of the Memorandum and Recommendation, the Magistrate Judge recited the factual allegations set forth in the Complaint. [Doc. 29 at 2-12]. Defendants Rhoney and Sams object to the Magistrate Judge's statement that paragraphs 138 through 140 of the Complaint allege that Defendant Rhoney withheld the report of Officer Wiles's interview from the prosecution. [Doc. 29 at 6]. The Defendants argue that the Complaint in

5

fact alleges that Defendant Rhoney withheld *SBI Agent Beuker's* fire investigation report from the prosecution, not the officer's report, as stated by the Magistrate Judge. [Doc. 31 at 3]. The Plaintiff concurs that the Magistrate Judge's characterization of these allegations was in error. [See Doc. 36 at 2]. The Plaintiff further points out that pages 7 and 8 of the Memorandum and Recommendation inadvertently refer to Mike Cosby as Mike "Crosby." [Doc. 33 at 8].

Upon careful review, the Court finds that, subject to the minor corrections noted above, the Magistrate Judge's recitation of the relevant factual allegations is correct. Accordingly, the factual background as set forth in the Memorandum and Recommendation is accepted and incorporated herein, subject to the above-noted corrections. In short, Plaintiff alleges that Officers Rhoney and Sams intentionally withheld substantial exculpatory evidence when Plaintiff was being prosecuted for two murders. Plaintiff was convicted and sentenced to death. After spending several years on death row, Plaintiff was released after the Defendants' misconduct was discovered and Plaintiff's convictions were vacated.

## IV. DISCUSSION

### A. The Section 1983 Claims

#### 1. The Statute of Limitations

The Defendants first object to the Magistrate Judge's conclusion that the Plaintiff's § 1983 claims are not time-barred. Specifically, the Defendants argue that the three-year statute of limitations period began to run when the Plaintiff learned of the alleged constitutional violation, which was in 2003. Since the Plaintiff did not bring this action 2010, the Defendants argue, the Plaintiff's § 1983 claims are time barred. [Doc. 31 at 3; Doc. 32 at 6].

The Defendants' objections are without merit. As the Magistrate Judge correctly concluded [Doc. 29 at 14-16], a cause of action under 42 U.S.C. § 1983 for damages arising from an unconstitutional conviction or sentence does not accrue until such conviction or sentence has been invalidated. See Heck v. Humphrey, 512 U.S. 477, 489-90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Under Heck, the Plaintiff's § 1983 claims accrued on November 6, 2007, when the state court issued an order vacating his convictions. [Doc. 1 at ¶¶ 7-8]. The Defendants concede that the applicable limitations period is three years. The Plaintiff filed the present lawsuit on November 3, 2010, within the applicable three-year statute of limitations. The Defendants'

objections to the Magistrate Judge's conclusion regarding the applicability of the statute of limitations is therefore overruled.

## 2. The Statute of Repose

The Defendants next object to the Magistrate Judge's failure to address their argument that the § 1983 claims are barred by the North Carolina statute of repose. [Doc. 31 at 3-4; Doc. 32 at 6-7].

The North Carolina statute of repose cited by the Defendants provides that no action for personal injury "shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16). Because the Complaint alleges that the Defendants' wrongful conduct allegedly occurred between June 1992 and November 1994, and the Plaintiff's Complaint was not filed until November 2010, nearly fifteen years later, the Defendants argue that the Plaintiff's § 1983 claims are barred by the statute of repose. [Id.].

The Defendants offer no precedent or other legal authority to support the application of a state statute of repose to a federal civil rights action. It is well-established that the "applicability of a state law to federal civil rights litigation … must be made in light of the purpose and nature of the federal right." Felder v. Casey, 487 U.S. 131, 139, 108 S.Ct. 2302, 101 L.Ed.2d 123

(1988). "The goals of the federal [civil rights] statutes are compensation of persons whose civil rights have been violated, and prevention of the abuse of state power." Burnett v. Grattan, 468 U.S. 42, 53, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Consequently, the Supreme Court has rejected the application of state laws which would undermine the goals of the civil rights statutes. See, e.g., Martinez v. California, 444 U.S. 277, 100 S.Ct. 533, 62 L.Ed.2d 481 (1980) (declining to apply state immunity statute to suit under § 1983); Burnett, 468 U.S. at 55, 104 S.Ct. 2924 (holding that a six-month limitations period was "manifestly inconsistent with the central objective(s) of the Reconstruction-Era civil rights statutes…."); Felder, 487 U.S. at 141, 108 S.Ct. 2302 (holding that a notice of claim statute could not be applied to § 1983 action). In light of this Supreme Court precedent, federal courts have declined to apply statutes of repose to civil rights actions. See Moore v. Liberty National Life Ins. Co., 267 F.3d 1209, 1219 (11th Cir. 2001) (holding that Alabama's common-law rule of repose did not apply to claims under § 1981 and § 1982); Craft v. Vanderbilt Univ., 18 F.Supp.2d 786, 798 (M.D. Tenn. 1998) (holding that Tennessee's statute of repose did not apply to claims under § 1983 and § 1985); Lowery v. County of Riley, No. 04-3101-JTM, 2005 WL 1242376, at *4 (D. Kan. May 25, 2005) (holding that a Kansas statute of

9

repose did not apply to a § 1983 claim arising from a wrongful conviction). For these reasons, the Court concludes that application of the statute of repose in this case to defeat the Plaintiff's claims would be "manifestly inconsistent with the central objective of the Reconstruction-Era civil rights statutes, which is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." Burnett, 468 U.S. at 55, 104 S.Ct. 2924. The Defendants' objection to the Memorandum and Recommendation on the issue of the statute of repose is therefore overruled.

### 3. Qualified Immunity

Defendants Rhoney and Sams next object to the Magistrate Judge's determination that they are not entitled to qualified immunity as to the Plaintiff's § 1983 claims. Specifically, they argue that the Magistrate Judge's analysis failed to focus on the *specific* constitutional right alleged to have been violated, namely, the Fourteenth Amendment right to due process when a *law enforcement officer* withholds exculpatory evidence from the prosecution, and instead relied upon precedent involving dissimilar factual scenarios of alleged constitutional violations. The Defendants further argue that the Magistrate Judge erroneously determined that such right was clearly established at the

time of the alleged wrongs by relying on case law that established the claimed constitutional right *after* the alleged wrongs in this matter. [Doc. 31 at 5-13].

Contrary to the Defendants' contention, the Magistrate Judge correctly focused his analysis on the specific constitutional right alleged. First, the Magistrate Judge correctly noted that the Fourth Circuit recognized as early as 1964 that a prosecutor's failure to turn over exculpatory evidence violated a criminal defendant's due process rights, even where the prosecutor had no knowledge of the evidence because the investigating officers failed to disclose it to the prosecution. [Doc. 29 at 19 (citing Barbee v. Warden, Md. Penitentiary, 331 F.2d 842, 846 (4th Cir. 1964)]. The Magistrate Judge went on to analyze the Fourth Circuit's subsequent treatment of due process claims arising from an investigating officer's failure to disclose exculpatory evidence. [Id. at 19-20]. As correctly noted by the Magistrate Judge, the Fourth Circuit has recognized that a police officer who withholds exculpatory information from a prosecutor can be liable under § 1983 because the non-disclosure deprives a criminal defendant of the right to a fair trial.[1] Goodwin v. Metts,

---

[1] As the Magistrate Judge correctly noted, this aspect of the Goodwin holding remains unaffected by the Supreme Court's ruling in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). See Taylor v. Waters, 81 F.3d 429, 436 n.5 (4th Cir. 1996).

885 F.2d 157, 163 (4th Cir. 1989); see also Carter v. Burch, 34 F.3d 257, 264 (4th Cir. 1994).

The Defendants contend that "[t]he controlling law in this circuit dictates that as late as 2010, the law remained unclear regarding [the] constitutional right to Due Process when police failed to disclose exculpatory evidence to the prosecution." [Doc. 31 at 9]. The Defendants' position, however, is not supported by the cases that they cite. For example, in Jean v. Collins, 221 F.3d 656, 663 (4th Cir. 2000) (*en banc*) ("Jean II"), the twelve judges of the Court of Appeals unanimously concluded that a police officer who deliberately withholds exculpatory evidence, and thus prevents the prosecution from complying with Brady, violates a criminal defendant's right to due process. The *en banc* Court was equally divided, however, as to whether a viable due process claim requires evidence of bad faith by the officer. In the present case, the Plaintiff has properly pled the bad faith element required by the Jean II concurrence and therefore, regardless of which standard is applicable, has stated a valid due process claim under § 1983.

Since the decision in Jean II, the Fourth Circuit has not affirmatively resolved whether bad faith is a necessary element of a due process claim under § 1983 for the withholding of exculpatory evidence by a police officer.

In Lynn v. Tarney, the Fourth Circuit recognized the uncertainty of the issue but elected to not address it because the Court concluded that under no potentially applicable standard could the plaintiff make out a Brady-type claim against the defendants. 405 F. App'x 753, 761 n.4 (4th Cir. 2010), cert. denied, 132 S.Ct. 241, 181 L.Ed.2d 137 (2011). Thus, contrary to the Defendants' contention, the footnote in Lynn does not stand for the proposition that the Plaintiff does not have a constitutional right to a fair trial through the disclosure of exculpatory evidence.

The Magistrate Judge further did not err in concluding that the constitutional right claimed by the Plaintiff was clearly established at the time of the alleged wrongs. The Magistrate Judge correctly determined that Goodwin and Carter gave the Defendants fair warning that the withholding of exculpatory evidence from the prosecution could subject them to civil liability. While the Defendants argue that Jean II and the footnote in Lynn v. Tarney, discussed above, show that the constitutional right was not clearly established, the Defendants fail to acknowledge that neither opinion addressed the clearly established prong of the qualified immunity analysis. Both Jean II and Lynn merely held that the plaintiff's evidence failed to establish a genuine issue of material fact that the officers had committed a

due process violation. See Jean II, 221 F.3d at 663 (Wilkinson, J., et al., concurring in the judgment); Lynn, 405 F. App'x at 760-63.

The Defendants further argue that the unpublished opinion in Walker v. Sopher, Nos. 95-2248, 96-1088, 1998 WL 682283 (4th Cir. Sept. 23, 1998) "is still good law [and that] it was erroneous for the Magistrate to have failed to follow that precedent." [Doc. 31 at 12]. As an unpublished decision, however, Walker is not binding Circuit precedent. Nor is it persuasive authority, as noted by the Magistrate Judge. [Doc. 29 at 20]. The majority of the challenged conduct in Walker occurred before Goodwin; furthermore, the qualified immunity analysis was based extensively upon Jean I, a decision which is no longer controlling law. Accordingly, Walker does not direct a different result in this case.

In sum, the Court concludes that the Magistrate Judge properly analyzed Defendants' qualified immunity defense and correctly concluded that the Plaintiff stated a valid due process claim and that the right was clearly established at the time of the violations. The Defendants' objections to the Magistrate Judge's conclusion regarding qualified immunity are therefore overruled.

### 4. Claim Against the City of Hickory

The City objects to the Magistrate Judge's recommendation that the Court deny the City's Motion to Dismiss the Plaintiff's § 1983 claim, arguing that the Plaintiff has not alleged sufficient facts to show the existence of a municipal custom or that the custom was the proximate cause of the deprivation of his rights. [Doc. 32 at 7-13].

The City's primary argument is that the Plaintiff failed to allege multiple instances of police misconduct by City officers sufficient to support a showing of a widespread pattern of unconstitutional conduct. Contrary to the City's argument, the Plaintiff is not required to allege multiple instances of police misconduct in order to state a claim for relief against the City under § 1983. See Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994) (noting that a plaintiff is not required to "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation"). Rather, the Plaintiff has to allege a "persistent and widespread" practice among municipal employees, along with enough facts to permit the reasonable inference that the City had actual or constructive knowledge of such practice. See Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987). Plaintiff did so in this case, as correctly determined by the

15

Magistrate Judge. [Doc. 29 at 23-24]. Specifically, the Plaintiff alleged that the City had an official policy that required officers to provide only typewritten reports to the prosecution, thereby implicitly allowing its officers to withhold from the prosecution handwritten notes, telephone memos, pending lab work, and case reports from other cases. [Doc. 1 at ¶¶ 282-86]. This policy, according to the Plaintiff, fostered a custom in which City police officers would withhold these materials from the prosecution, even when they contained exculpatory information, and allowed City officers to keep clandestine files with exculpatory materials away from the prosecution and therefore, criminal defendants. The Plaintiff alleged that Defendants Rhoney and Sams, as well as other officers, withheld exculpatory evidence on multiple occasions in accordance with this custom. For these reasons, the Court concludes that the Plaintiff has alleged sufficient facts to state a valid § 1983 claim against the City. The City's objection in this regard is therefore overruled.

Next, the City argues that the Plaintiff has failed to allege sufficient facts to show that the City's custom was the proximate cause of his constitutional deprivation in that the actions by Defendants Rhoney and Sams "would not have been permissible under the policy promulgated by the Police Department." [Doc. 32 at 12]. This argument, however, ignores the express

16

allegations in the Complaint that the City's written policy, which required officers to provide prosecutors with only final typewritten reports, implicitly condoned the retention or destruction of all handwritten notes, phone memoranda, and pending lab work. [Doc. 1 at ¶¶ 282, 285]. The Plaintiff specifically alleges that Defendants Rhoney and Sams acted in accordance with this custom when they intentionally withheld the material exculpatory evidence from the prosecution and that this custom was a cause of, and the moving force in, the Plaintiff's wrongful convictions. [Id. at ¶¶ 289-91]. The Plaintiff properly alleged that the City's custom was a proximate cause of the due process violations by Rhoney and Sams. The City's objection in this regard, therefore, is overruled.

### B. The Obstruction of Justice Claims

In their pleadings, the parties agree that the three-year statute of limitations found in N.C. Gen. Stat. § 1-52(5) applies to the Plaintiff's common law claims for obstruction of justice, but they disagree on the date that those claims accrued. The Magistrate Judge, applying the reasoning of Self v. Yelton, 201 N.C. App. 653, 688 S.E.2d 34 (2010), reasoned that the Plaintiff's obstruction of justice claims accrued in 2003, when the Plaintiff became aware or reasonably should have become aware of the harm, and therefore

17

recommended that these claims be dismissed as time-barred the claims were not timely. [Doc. 29 at 26]. The Plaintiff objects to the Magistrate Judge's recommendation. [Doc. 33 at 12-23].

In Self, the North Carolina Court of Appeals expressly articulated the accrual standard for an obstruction of justice claim to be "when a Plaintiff becomes aware or reasonably should have become aware of the harm." 201 N.C. App. at 600, 688 S.E2d at 39. In this case, the Court concludes that the Plaintiff did not discover, and could not have reasonably discovered, that he was injured by the Defendants' alleged obstruction of justice until 2007, when his Motion for Appropriate Relief was granted and his convictions were vacated. See Dail v. City of Goldsboro, No. 5:10-CV-00451-BO, 2011 WL 2837067, at *7-8 (E.D.N.C. July 14, 2011) (holding that plaintiff's obstruction of justice claim did not accrue until he was exonerated and released from prison). The Plaintiff filed the present action within three years of the state court's order vacating his convictions. Accordingly, his claims are not barred by the statute of limitations.

While the statute of limitations does not preclude the Plaintiff's claims, the Court concludes that the statute of repose prevents these claims from going forward. As noted previously, the North Carolina statute of repose

18

provides that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." N.C. Gen. Stat. § 1-52(16). Here, the last acts of the Defendants giving rise to the Plaintiff's causes of action occurred in 1994. The Plaintiff, however, did not assert his obstruction of justice claims until 2010. As such, these state law claims are barred by this state law statute of repose. See Self, 201 N.C. App. at 660, 688 S.E.2d at 38-39.

Therefore, the Court accepts the Magistrate Judge's recommendation that the Plaintiff's obstruction of justice claims be dismissed, although for reasons other than those articulated by the Magistrate Judge. Because the Court concludes that the Plaintiff's obstruction of justice claims are time-barred, the Court need not address the other issues raised by the parties as to these state law claims.

# O R D E R

**IT IS, THEREFORE, ORDERED** that the parties' Objections [Doc. 31, 32, 33] are **OVERRULED**; the Magistrate Judge's Recommendation [Doc. 29] is **ACCEPTED**, and the Defendants' Motions to Dismiss [Docs. 17 and 19] are hereby **GRANTED IN PART** and **DENIED IN PART**. Specifically, the

Defendants' Motions are **GRANTED** to the extent that the Plaintiff's obstruction of justice claims are **DISMISSED**. In all other respects, the Defendants' Motions are **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants shall file their Answers to the Plaintiff's Complaint within 21 days of the entry of this Order.

**IT IS SO ORDERED**.

Signed: May 30, 2012

Martin Reidinger
United States District Judge